## GRAEF v DIME SAVINGS BANK

Ohio Appeals, 9th Dist, Summit Co

No 2849. Decided April 8, 1937

Slabaugh, Seiberling, Huber & Guinther, Akron, for appellee.

Rockwell, Grant, Doolittle, Thomas & Buckingham, Akron, for appellant.

## OPINION

By DOYLE, J.

This action originated in the Municipal Court of Akron, wherein the guardian of Harold E. Joy, who had been adjudged an incompetent, brought suit against the defendant bank, the appellant herein, for $230. Before trial the guardianship was terminated and the action proceeded with Joy, the actual plaintiff. He is the actual appellee in this appeal on questions of law.

The complaint in the petition, in brief, was that Joy was a creditor of the bank by virtue of having deposited money on checking account in said bank; that within the period of the deposit, some person, "without the authority or knowledge of the said Harold E. Joy, drew certain bank checks and fraudulently signed and forged the name "H. E. Joy" as the drawer and maker of said checks, which checks so drawn and executed were in due course presented to said defendant for payment, and were paid by it and charged to the account of said Harold E. Joy, without his

knowledge or consent." The complaint further stated that the defendant bank had paid thirteen forged checks in the total amount of $230; that plaintiff's guardian had requested the bank to pay back the "amount of $230, wrongfully and unlawfully paid by it upon said checks and charged to the account of said Harold E. Joy, which payment * * * the defendant has refused to make."

The bank answered the complaint with the charge that "if it can be found that any of the checks referred to in the petition were drawn and executed by any person other than said Harold E. Joy, or some person by him duly authorized, that the drawing, issuing and presentation of said checks were duly ratified by said * * * Joy, and that said * * * Joy specifically ratified the drawing and making of each and all of said checks, authorized the payment thereof, requested defendant to accept said checks and cause the same to be paid, and directed defendant to retain said checks, charge the same to the account of * * * Joy, and not either to refuse payment upon, return or undertake to collect said checks or any of them from any other person whatsoever."

Further answering, the defendant bank pleaded that it "requested instructions from said * * * Joy with respect to the disposition to be made of each and all of the checks set forth in the petition and at said time defendant could have recovered from others the amounts represented by said checks, could have returned some thereof or charged the same back to others through whose hands said checks were cleared and came to defendant, but that relying upon the request and direction of said * * * Joy * * *, paid each and all of said checks and charged the same to the account of said * * * Joy." With the exception of the above pleaded facts, the bank generally denied the charges made. The alleged facts all occurred before the guardianship.

A jury was waived in the trial court, evidence was submitted, and a judgment in the amount of $200 was rendered against the bank.

At the request of the appellant bank, the court made a finding of facts setting forth its conclusions from the evidence adduced. The pleadings, the findings of fact, the checks with all indorsements, and the conclusions of law, are now before this court, and upon them alone this appeal must be decided.

The trial court found:

"First: Prior to the appointment of the plaintiff as guardian of Harold E. Joy, on the 29th day of October, 1935, said Harold E. Joy, under the name of 'H. E. Joy,' maintained an active checking or commercial account with the defendant bank which was then and still is doing a general banking business in the city of Akron, Ohio.

"Second: That on the dates set forth in the following table there were received by said bank and in due course by it paid, fifteen (15) checks purporting to be signed by 'H. E. Joy,' on each one of which said checks said name of H. E. Joy was a forgery; and the approximate dates upon which said checks were presented to and paid by the defendant and the respective amounts thereof are as follows: August 9, 1935, $20.00; August 12, 1935, $20.00; August 14, 1935, $5.00; August 14, 1935, $10.00; August 19, 1935, $15.00; August 21, 1935, $25.00; August 23, 1935, $20.00; August 28, 1935, $20.00; August 31, 1935, $20.00; September 4, 1935, $10.00; September 4, 1935, $20.00; September 4, 1935, $5.00; September 4, 1935, $10.00; September 5, 1935, $20.00; September 6, 1935, $10.00; Total, $230.00.

"Third: Thereafter, after the first of September, 1935, at a time when all of said checks except the last two had been paid by said bank, said Joy called at said bank and procured his statement and cancelled checks for the month of August, when he discovered for the first time that said August checks, together with the first four September checks, were forgeries, and he so informed the bank, and that said checks had presumably been forged by his daughter-in-law living in Cleveland. Said Joy was thereupon informed by the bank that it would take the checks back and credit his account with their amounts thus wrongfully paid out and that it would endeavor to apprehend and prosecute the forger. The bank was thereupon told by said Joy that it might continue to charge the checks to his account, as he did not desire to have the forger prosecuted or any publicity made in the matter. No demand was made by the bank of Mr. Joy for the checks other than as above stated, neither were any steps taken by the bank at any time to apprehend or prosecute the forger or to recover from any person whomsoever the amount of said checks, nor to protest said checks or notify any person liable thereon of the forgery.

"Fourth: Thereafter, the last two checks set forth in the list hereinbefore set forth were paid by said bank upon instructions

from Mr. Joy to charge the same to his account, which was done.

"Fifth: Within the last week of June, 1933, H. H. Graef, husband of the plaintiff and the son-in-law of said H. E. Joy, suspecting that said daughter-in-law would endeavor to get money from said H. E. Joy by forging his name to checks, notified the trust officer and assistant secretary of the bank that the bank should be on its guard against such forged checks and not to pay the same if presented.

"Sixth: All of said checks were introduced in evidence and are attached to and made a part of this finding of facts, as exhibits.

"Seventh: On or about the 30th day of October, 1935, the plaintiff, after appointment as guardian, demanded the return of said money so wrongfully paid out by the defendant upon such forged checks, which was refused by the bank.

"Eighth: No further communication or request was received or made by either party to the other in the above matter, until the guardian was appointed as above stated. This suit was commenced by said guardian and thereafter said guardian was discharged and said Harold E. Joy was substituted as plaintiff."

The rule is definitely established in Ohio that a forged check is not merely voidable, but absoluely void and that ██ one whose name is forged to a check cannot by subsequent conduct ratify the act of forging and make the instrument valid. This rule, however, does not in all instances save harmless the one whose name has been forged, because it is equally well established that one may, by his conduct, statements or silence, estop himself from claiming that his signature is a forgery.

Workman v Wright, 33 Oh St 405, 31 Am. Rep. 546.

Shinew v First National Bank, 84 Oh St 297, 95 NE 881, 36 L.R.A. (N.S.) 1006, 1912C Ann Cas. 587.

Sec 8128, GC.

The burden of proof, used in the sense of the burden of persuasion, is upon the bank to justify its payment ██ of a forged check, and its only possible defense, under such circumstances. is the establishment of acts or conduct on the part of the claimant creating an estoppel.

Fourth & Central Trust Co. v Johnson, etc., 24 Oh Ap 129, (5 Abs 357).

Did the actions of Joy create an estoppel? The findings of fact reveal that at no time did the bank regain the possession of the forged checks after they were given to Joy with his monthly statement, although the bank had told him it would "take the checks back and credit his account with their amounts thus wrongfully paid out."

There was no further duty on the bank to secure possession of the evidence of the forgery. This evidence was indispensible to the defendant bank, and without it the Cleveland banks and the other indorsers, through which the paper had passed and which had guaranteed "all prior indorsements,." could not be held to the guarantees.

Can it be said that the defendant bank has not been injured?

Silence itself is sufficient to work an estoppel when the facts reveal a duty and opportunity to speak and a █ failure so to do, coupled with knowledge that one will rely on such silence, and where that one actually does rely on such silence, to his damage.

How much stronger is the present case, when, in compliance with a specific request of plaintiff that no action be taken by the bank to recover from the forger or to protect itself against loss, the bank was lulled into inaction and suffered loss thereby, and all for the humane purpose of saving a respectable citizen from the humility and embarrassment of possible publicity attendant upon the exposure of his daughter-in-law's felonious conduct.

A leading New York case decided on the principle of estoppel has carried the doctrine to the extent that a representation by which one is lulled into inaction, and thus refrains from arrest of a forger, is sufficient to create an estoppel, although there is no evidence that anything would have been recovered from the forger in case he had been prosecuted at the time of the representation.

Hattie Rothschild et v Title Guarantee & Trust Co., 204 N. Y. 458, 97 NE 879.

In the instant case, the defendant bank could have looked not only to the forger, but to the Cleveland endorsing banks, and the other endorsers, as well.

Pursuing still another principle of law, the following query presents itself: Did the plaintiff Joy enter into an enforcible contract with the defendant bank?

The argument is presented by the plaintiff that whatever was done by way of requests and promises was but a nudum pactum.

In the case of W. B. Saunders Co. v Galbraith et, 40 Oh Ap 155, (11 Abs 34) the court quoted with approval §90 of the

Restatement of the Law of Contracts, as follows:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

We are well acquainted with the law dealing with consideration in the making of valid contracts, and are satisfied that, even though there may be doubt as to the existence of the usual kind of consideration in the instant case (although we do not say there is such doubt), the statement made by Joy that he would permit his account and wanted his account to stand the loss occasioned by the forgeries, his promise to the bank that he would forego the credits ▮▮▮▮▮▮ offered him, and his retention of the checks, were not only sufficient to estop him, but may well be considered as sufficient to fall within the rule which has for so long a time permitted certain moral obligations to supply consideration; and this is especially so here when coupled with the security and peace of mind which undoubtedly was experienced by Joy in saving harmless the family name and reputation.

Section 90, Restatement of the Law of Contracts, supra, we believe states the proper rule, and we also subscribe ▮▮▮▮▮▮ to the sentiments of the late Judge Mauck when he stated, in the opinion in the Saunders Co. case, supra, that "it would not be difficult to sustain the soundness of §90 as the boiled-down essence of the law of Ohio. We are content, however, to take the restatement as the law of this state without exploring its soundness, and hold that of its own vigor it is adequate authority. * * * We only hold that he who would not have it followed has the burden of demonstrating its unsoundness."

The facts of this case warrant the application of the principle that, although there can be no ratification of a forgery, the one whose name is forged may, for a valuable consideration, and with full knowledge of all the facts, adopt the obligations of the forged instrument and agree to be bound thereby, "or he may become bound by his failure to speak when he ought to have spoken, or he may, by his speech or his acts and conduct, so mislead another as to be bound" by the result of the forgery.

Briggs v Hutson et, 27 Oh Ap 93, (6 Abs 375); affirmed, Hutson v Briggs et, 120 Oh St 58.

In that case the aforesaid rule was applied by this Court of Appeals to an unpaid forged instrument. In the instant case, the entire transaction was executed at the instance of the plaintiff, and at his special request. Much stronger is the application of the rule to this case than to the facts of that one.

We hold that the trial court committed error in rendering judgment for the plaintiff in the sum of $200, and said judgment is reversed. The facts being undisputed, this court now proceeds to render the judgment which the trial court should have rendered, and orders that final judgment be entered for the defendant, the appellant herein.

Judgment reversed and final judgment for appellant.

STEVENS, PJ, and WASHBURN, J, concur in judgment.