**WEST et, Plaintiffs Appellees v. CLEVELAND RAILWAY CO, Defendant Appellant**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 19610. Decided May 22, 1944.

M. J. West, Cleveland, and H. L. Deibel, Cleveland, for Plaintiffs Appelles.

Samuel T. Gaines, Cleveland, and Robert F. Mooney, Cleveland, for Defendant Appellant.

Doyle, J. (9th Dist.) sitting in place of Skeel, J. (8th Dist.)

## OPINION

By DOYLE, J.

This is the appeal of an action against The Cleveland Railway Company, predicated upon the claimed unlawful transfer, by said company, of certain shares of its capital stock into the name of one Grace C. West "without limitation or qualification, and without regard to the provisions" of a will and "in disregard of the interests of plaintiffs in said

shares, although the defendant at the time of such transfer well knew of the terms and conditions of said will and the limited interests thereunder of Grace C. West and the remainder interests of plaintiffs in said shares." The petition further alleged that "without the knowledge or consent of ·the plaintiffs, and without consulting plaintiffs, the defendant wrongfully, fraudulently and wilfully permitted the sale by said life tenant and the transer of said * * * shares to a third person in disregard of the rights of the plaintiffs therein; and wrongfully, fraudulently and wilfully cancelled and destroyed the certificate of stock evidencing the decedent's said * * * shares." The petitioners prayed for a money judgment for damages alleged to have been proximately caused by the "wrongful, fraudulent and wilful acts" of the defendant.

A jury was waived in the common pleas court of Cuyahoga County and trial was had. At the conclusion thereof judgment was entered for the plaintiffs, in the amount of $9,799.14. After the overruling of a motion for a new trial, the defendants filed the instant appeal on questions of law.

The record in brief shows the following:

Charles P. West, Sr., died in 1926 and owned among other things 52 shares of the capital stock of the Cleveland Railroad Company. His widow, Grace C. West and two sons, Charles P. West Jr., and Maurice J. West survived him. His will included the following items:

·"Item II. I give, devise and bequeath to my beloved wife, Grace C. West, in lieu of her dower and year's support, the use, income, rents and · profits of all my property of every kind and nature and wheresoever the same may be located, for and during her natural life, to use, enjoy and dispose of the same as she may deem best."

"I hereby give to my said wife authority with the consent and advice of my two sons hereinafter named, without the intervention of the Probate Court, to convert any or all of my real estate or securities into money and to invest and reinvest the same and any other moneys I may have at the time of my decease, in such manner as she and my said sons may determine.

"Item III. After the decease of my said wife, I direct that all of my said property be divided equally between my two

sons, Charles Peyton West and Maurice John West, share and share alike, or their heirs, per stirpes or in case of the death of either without leaving lawful heirs of his body, then all of said property shall go to the survivor of them."

The widow was appointed executrix. On January 20, 1927, she presented the Cleveland Railroad Company stock to the company's transfer agent, the Union Trust Company, and asked that it be transferred into her name The transfer agent, through legal counsel, wrote her on January 28, 1927, that under the terms of the will she had a life interest only, in the stock, but that if she would get her two sons to sign stock powers (enclosed in the letter) "transferring all of their interest to you" his company then would be authorized under the provisions of the will, to issue a new certificate in her name alone.

Mrs. Grace C. West thereupon presented the matter to the sons of the testator (her own step-sons) who, after discussion, affixed their signatures to the instrument. (Both sons were adults. Charles P. West Jr., was a graduate electrical engineer, employed by the Westinghouse Electrical & Manufacturing Company, Pittsburgh, Pennsylvania, and the younger, Maurice J. West, 24 years of age, was completing a legal education and was admitted to practice a few months later.)

This instrument is in the following form:

"Irrevocable Stock Power

Know all men by these presents: That I, Charles P. West, Grace C. West, executrix, C. P. West estate, for value received, have bargained, sold, assigned and transferred and by these presents do bargain, sell, assign and transfer unto Mrs. Grace C. West, 52 shares of the capital stock of the Cleveland Railroad Company standing in my name on the books of the company, and do hereby constitute and appoint The Union Trust Company _____ true and lawful attorney, irrevocable for _____ and in _____ name and stead, to assign, transfer and set over, all or any part of the said stock, and for that purpose, to make and execute all necessary acts of assignment and transfer, and one or more persons to substitute with like full power, hereby ratifying and confirming all that _____ said attorney or _____ substitute or substitutes shall lawfully do by virtue hereof.

IN WITNESS WHEREOF we have hereunto set _____ hands the 31st day of January 1927.

Witness: (signed)          (signed) Charles P. West Jr.
Helen C. Spittler          (signed) M. J. West.    "

After the signatures were affixed to this instrument Mrs. West enclosed it with the following letter and mailed the missives to the Union Trust Company:

"314 Berkshire Road
Cleveland, Ohio
January 27, 1927.

"Union Trust Company
Cleveland, Ohio.
Gentlemen:

Complying with request contained in your letter of January 28th (Jay R. Gates) and enclosing stock powers signed by my sons.

Yours truly
(signed) (Mrs. C. P.) Grace C. West."

Subsequently a new certificate for the stock was issued in the name of Grace C. West. Mrs. West then sold the stock to an innocent third person, and on November 1, 1927, it was transferred into the name of the said purchaser.

The original petition was filed in the Court of Common Pleas on June 2, 1934. On February 24, 1942, the plaintiffs demanded of the corporation the restoration of the cancelled certificate for the 52 shares of stock and for a recognition of all rights in said corporate stock lost by reason of defendant's alleged unlawful acts. On March 25, 1942, an amended and supplemental petition was filed, and on June 4, 1942, a second amended and supplemental petition, each alleging the above stated demand on the defendant.

Among the various grounds pleaded in defense appears the following:

1. That the plaintiffs had given their advice and consent to the transfer of stock in accordance with the terms of the will, as evidenced by their signatures on the "irrevocable stock power."

2. That the plaintiffs had by their signatures on that instrument assigned their interest to Grace C. West.

3. That this instrument constituted a power of attorney to the Union Trust Company to transfer the stock.

4. That by signing this instrument, knowing that the Union Trust Company intended to act upon it, they were estopped to deny that they had assigned their interest to Grace C. West.

There is an attempt to invoke in the foregoing defenses the doctrine of equitable estoppel, and to that question present attention is directed.

This doctrine arises from the conduct of a party as evidenced by his spoken or written words, his positive acts, his silence or negative omission to act, etc. and while the doctrine is pre-eminently a creature of equity, it has been incorporated into the law and is universally applied by courts of law in the decision of legal questions. The doctrine is administered in the same manner and in conformity with the same rules, by the courts both of law and equity.

While there are a great many definitions of this theory of law, applicable in most instances to the facts of the particular case under consideration, it may be safely asserted that, where one by his words or conduct causes another to believe in the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time. And likewise, "if, **whatever a man's real meaning may be,** he so conducts himself that a reasonable man would take the representation to be true, and believes that it was meant that he should act upon it, and did act upon it, as true, the party making the representation would be equally precluded from contesting its truth * * * * *."

3 . Pomeroy's Equity Jurisprudence, quoting in note on p. 193 from the case of Freeman vs. Coke, 2 Ex. (Eng.) 654.

The record before us shows the plaintiffs, men of education, who by the express terms of a will possessed an interest in remainder in certain stock, affixing their respective signatures to a standard form of "irrevocable stock power" in which they "sold, assigned and transferred" to their mother the stock in question and appointed in the same instrument the Union Trust Company as their agent to act in their stead and expressly ratified and confirmed the acts of their designated agent in respect thereto. The evidence further shows that,

while the defendant knew of the life interest of the mother, and the interest in remainder of the plaintiffs, it also knew that under the will the owner of the life interest with the "consent and advice" of the two sons, the plaintiffs herein, had the power to convert this very stock into money.

It seems to the writer of this opinion that the plaintiffs voluntarily and knowingly signed their names to a stock power, which stock power conveyed a certain definite meaning in the ordinary course of business, and that in recognition of the express conveyance of the plaintiff's interest and the powers expressly granted by the plaintiffs, and relying solely on the instrument, the defendant acted and in so acting it did only that which a reasonable person would have done in the general course of business, and except for such powers expressly granted it would not have acted .

Under such circumstances, the plaintiffs are estopped by their own conduct, because they cannot deny their own acts nor the reasonable inferences to be drawn therefrom, even though they may not have intended the defendant to have so acted.

Determining as we do the question of estoppel, it becomes unnecessary to determine the other questions raised. The case of **West v American Telephone & Telegraph Co. 54 Oh Ap 369,** has been re-examined, as well as the decisions subsequently rendered as that controversy pursued its course through the various federal courts and into the Supreme Court of the United States. West v American Telephone & Telegraph Company, 311 U. S. 223. The facts of that case did not present the question of direct authorization or estoppel. It is noted only by way of passing interest.

The judgment is reversed as being contrary to law, and final judgment will be entered for the defendant.

MORGAN, P. J., LEIGHLEY J. concur.