**WELSH et, Plaintiffs, v. TONTI et, Defendants.**

Common Pleas Court, Franklin County.

No. 195393.   Decided May 23, 1958.

Richard B. Metcalf, for plaintiffs.
Samuel L. Zuravsky, for defendants.

## OPINION

By SATER, J.

The premises familiarly known as 2775 Regina Avenue, Columbus, Ohio, consist of a house and lot located at the southeast corner of Regina Avenue and Warren Avenue in Brookshire Park Addition, the plat for which was duly recorded late in 1950 or early 1951; Regina Avenue is to the north, Warren Avenue to the east of the premises.

The petition alleges that on August 3, 1954, defendants being the owners thereof, contracted to sell such premises to Ella Welsh and Walter S. Welsh (since deceased), for a valuable consideration,

"STREET ASSESSMENTS: To be adjusted as follows: Grantor to pay street costs.

"Grantee to assume no street improvement costs, sewer or water."

This contract, which is of standard form, contains this quoted language and was received in evidence as Exhibit 1. However, when this contract ripened into a warranty deed between the parties, also a standard form of deed, on September 27, 1954, the covenant clause of the deed omitted the language quoted above and provided that the premises were free and clear excepting any and all unpaid taxes and assessments which the grantees (plaintiffs) assume and agree to pay. On this score, the petition alleges mutual mistake; continuing, it is alleged that 13 months later plaintiffs, who had long since become the recorded holders of title, were notified of the levy of special assessments against such premises in the sum of $1,065.34. The prayer is for reformation of the deed to comply with the terms of the contract quoted above, or in the alternative, for damages in the stated sum of $1,065.34, and costs.

Admitting the contract to purchase, the answer turns on the assertion that grantees' freedom from street, sewer and water assessments quoted above, applied only to Regina Avenue, and alleges further that defendants did pay all such assessments, that such payments consequently constituted full compliance with the contract, and that the resultant deed was executed and delivered by them on the date mentioned. The prayer is for dismissal of the petition. Plaintiffs' reply denied defendants' compliance with the contract to purchase, and renews their original prayer for relief. At the hearing on the merits, counsel for defendants entered into the record the following stipulation which is enlightening:

"Mr. Zuravsky: It is agreed by and between Plaintiff and Defendant that the following facts be stipulated; that on August 3rd, 1954, a purchase contract was entered into between the Plaintiff, Ella Mae Welsh and Walter S. Welsh, now deceased, and Alfred E. Tonti, Defendant; that said purchase contract provided for the sale of a one story brick ranch home known as 2775 Regina Avenue, situated on lots 93 and 94 of Brookshire Park Subdivision; that under the terms of said contract, said contract containing a provision that the grantee was to assume no street improvement costs, sewer or water.

"It is further stipulated that for 70 feet on Warren Avenue property was not serviced by any paved street, although the intersection was laid out and the addition was laid out in contemplation of said 70 feet having paved frontage, whether said Warren Avenue would be paved one year or five years or ten years in the future, we don't know.

"It is further stipulated by and between the parties that the City Clerk's Office did on May 28th, 1954, notify the Defendant, Alfred Tonti, that assessment on lots 93 and 94 were going to be made, said lots being the subject of this suit and that proper steps were followed by the City

to final consummation of the notice and that at some later date the said assessment was placed upon the tax duplicate against Lots 93 and 94.

"It is further stipulated that Plaintiff's Exhibits A and B are paid tax bills showing assessments on the lots 93 and 94 and the original amount of the assessment was $1,064.34, this amount being the total assessment including interest being the sum of $12,032.40 and that a deed was delivered by Alfred Tonti and Mary B. Tonti to Walter S. Welsh and Ella M. Welsh for lots 93, 94 Brookside Park Subdivision and same is recorded in Volume 1837, page 463, Recorder's Office Franklin County, Ohio, on September 27th, 1954, and that the Ella M. Welsh is the present feeholder of the premises.

"It is further stipulated by and between counsel that the legality of the assessment on the aforementioned lots is not a question to be resolved by the Court in this suit, that is the City is not a party defendant in this case nor party defendant and that the legality of said assessments cannot be challenged by either party to this suit.

"It is further stipulated by and between counsel that the notice served upon Mr. Tonti, Defendant herein, was in such form as to inform said Mr. Tonti that an assessment was to be made, that objection must be made within 30 days or assessment would be made. It identified the lots which are the subject of this suit and showed the approximate amount of the assessment to be made, which is approximately the amount of money the subject of this suit."

We are concerned here with only the particular facts of this case. We are not concerned with, nor do we consider, any other assessment or notice of assessment, actual or proposed. Just a scant 36 days before defendants contracted to sell to plaintiffs on the terms set out above, they had due statutory notice and warning of the proposed assessment for the improvement of Warren Avenue; they received this notice as being the then record holders of title. It is not asserted, nor can it be asserted, that at that time plaintiffs appeared anywhere in the picture, had any interest in the premises, or had or could have any means at their disposal of knowing or learning of either the notice or of the proposed assessment. Yet, when plaintiffs did appear on the scene, the defendants stood idly and silently by; they did not protest or appeal the notice of the proposed assessment; they signed the contract with the language in it as set out above, and nowhere claim that they ever mentioned or spoke of the notice of assessment either directly or indirectly to plaintiffs-purchasers or either of them. Yet under the circumstances, plaintiffs were bound to rely on defendants' representations, and defendants knew or should have known so.

Since earliest days sound lodgement has been found in the law of Ohio for the equitable principle that when one of two innocent parties must suffer, the loss shall fall on him whose conduct brought about the situation. Selser, Exr. v. Brock, 3 Oh St 302, last syllabus and Wilson v. Hicks, 40 Oh St 419, 429. The second syllabus of the Wilson case reads as follows:

"When a loss has happened which must fall on one of two innocent

persons, it must be borne by him who is the occasion of the loss, even without any positive fault committed by him, but more especially if there has been any carelessness on his part which caused or contributed to the loss."

Such is the case at bar. All other considerations aside, for the purpose of argument, defendants' carelessness and nonfeasance were the direct cause of the controversy and loss. Since defendants would certainly have been lawfully and properly obligated to pay the assessment had they remained owners of the title, the circumstances surrounding their fortuitous sale of the premises require that burden to remain with them. Nor can the possible fact that defendants might have forgotten the notice or the fact that they might have forgotten that the premises abut on two streets rather than on one, furnish them relief from their ill-starred contract. The wording of their contract is clear and without, for the purpose of this case, limitation or exception; that wording should have been set out in the deed which followed.

In the second place, there is the matter of equitable estoppel of defendants to deny the existence and effect of their knowledge and their contract. Even if it be conceded that the pleadings leave something to be desired, nevertheless the full record is ample to enable the Court to consider and follow this doctrine. **Kellogg-Mackay Co. v. O'Neill, 39 Oh Ap 372, 380-381.** wherein the Court stated: "And, if the admitted facts before us are sufficient to work an estoppel, the equitable doctrine should be applied even if the facts are insufficiently pleaded." See, also, **Castalia Trout Club v. Castalia Sporting Club, 8 O. C. C., 194, 208-209,** affirmed without opinion, in **56 Oh St 749.**

When we come then to consider the matter of applying to defendants the principle of equitable estoppel, we find present here all three requqirements: (1) neglect of duty to plaintiffs, (2) inherency of such neglect to the transaction involved, and, (3) the fact that such neglect was the proximate cause of misleading plaintiffs. Defendants' duty to inform plaintiffs of the full true situation rests here on both silence and inaction; yet, the duty existed, and there was ample and there was full opportunity to speak or act. They may not profit from their own wrong even though it was not calculated.

The principle of equitable estoppel applies to transactions involving real estate. In pointing out that fraud is not a necessary element of estoppel, the Court in **Rosenthal v. Mayhugh, 33 Oh St 155, 156,** said,

"It is not necessary, to an equitable estoppel, that the party should design to mislead, it is enough if the act or declaration was calculated to and did mislead another acting in good faith and with reasonable diligence."

And, again, in **Beardsley v. Foot, 14 Oh St 414, 416;**

"The circumstances may be such that 'good conscience and honest dealing' may require a party to bear the consequences of his own negligent mistake. instead of throwing the resulting loss upon another whom he has misled."

See also. **Penna. Co. v. Platt, 47 Oh St 366, 385, Sanitary Mfg. Co. v. George, 118 Oh St 564, 573-574, and Bailey v. Stredonsky, 57 Oh Ap 265, Syl. 1.**

The principle also applies to transactions involving personalty. **Graef v. Dime Savings Bank, 24 Abs 409, 411, West v. Railway Co., 41 Abs 554, 559,** and **Baranowicz v. Insurance Co., 66 Oh Ap 444, 448.** The third syllabus of the Graef case is:

"Silence itself is sufficient to work an estoppel where the facts reveal a duty and opportunity to speak and a failure so to do, coupled with knowledge that one will rely on such silence, and where that one actually does rely thereon to his damage."

The record shows that plaintiffs have paid two installments on the assessments for the improvement of Warren Avenue; other installments will unquestionably follow, all directed to plaintiffs or their successors in title. For the former defendants shall make corresponding reparation to plaintiffs; for the latter they shall provide full and adequate indemnity. An appropriate order may be presented to the Court to execute the foregoing.