McINTOSH, D.B.A. SMALL WORLD, *v.*
MICHELI RESTAURANT, INC.

(No. 84 CVF 6693—Decided October
15, 1984.)

Akron Municipal Court.

*Richard L. Williger,* for plaintiff.
*John A. Nehrer,* for defendant.

SCHNEIDERMAN, J. A trial was held on October 15, 1984. Plaintiff seeks $900 in compensatory damages, $5,000 in punitive damages, and attorney fees. Defendant denies the claims.

At all relevant times, plaintiff, Lachlan McIntosh, was a musician and managed a musical group known as "Small World," and defendant operated a restaurant and cocktail lounge known as Ed Micheli's Restaurant. On a lower level of the restaurant the defendant provided live entertainment several nights a week.

Plaintiff contacted defendant offering the services of his musical group and was told to speak to William Bozzelli, the bartender and manager of the lower level. The two found April 20 and 21

dates available, and they agreed on $225 per night and other terms. Plaintiff prepared an agreement, signed it and left it with Bozzelli for defendant's approval. Only Ed Micheli, one of the owners, had the authority to approve and sign contracts for defendant.

Thereafter, defendant discovered that the April dates had been booked earlier with a "house band," and plaintiff was so notified during the first week in April. The agreement with the "house band" was in writing and signed in November 1983. The proposed agreement between the parties was neither signed nor approved by defendant.

Plaintiff and Bozzelli discussed other dates and found June 15 and 16 available, and they agreed on the same terms as in April. Plaintiff prepared another agreement for the June dates and gave it to defendant for approval.

On June 7, plaintiff's group received an offer to play at a wedding reception on the 16th for approximately $450, and on or about the same date, plaintiff informed Bozzelli of the offer, and he was assured that his group had the June 15-16 dates. As a result, plaintiff declined the wedding reception offer.

Later, defendant learned that the June dates had been earlier booked with another band, and on or about June 12, the defendant notified plaintiff of the prior booking. The agreement for the earlier booking was in writing and signed on or before May 18. The proposed agreement between the parties for the June dates was neither signed nor approved by defendant.

It is the general custom in the music entertainment business that agreements between the music provider and the business place be in writing and signed by each party. Also, it is the separate practice of each party to have all such understandings in writing and signed by the parties.

On each occasion, a written proposal was left with the defendant for its consideration and approval, and neither time was the agreement accepted by the defendant. Where, as in this case, it is the intention of the parties that there shall be no contract until the agreement is reduced to writing and signed, or that the contract is to be reduced to writing and signed before the agreement is finally consummated, no contract exists until the writing is made. 17 Ohio Jurisprudence 3d (1980) 515-516, Contracts, Section 81; 17 American Jurisprudence 2d (1964) 406-407, Contracts, Section 67.

The circumstances were unfortunate for plaintiff, and the defendant did cause the misunderstanding, but, clearly, defendant was not obligated on any contract theory.

However, an estoppel doctrine applies and creates liability for the June 16 engagement. Legal scholars have delineated two separate equitable doctrines which have received varying degrees of acceptance by courts in this country, but the application of either of them would dictate recovery for the plaintiff in the amount of his charge for the June 16 date. These two doctrines are known as "equitable estoppel" and "promissory estoppel."

Equitable estoppel exists when a representation of fact is made to a party, who has a right to rely and does rely on it. Under these circumstances, the party making the representation cannot deny it, if such denial would result in injury or damage to the relying party. 1 Williston, Contracts (3 Ed. 1957) 601-607, Section 139.

The American Law Institute declared promissory estoppel to be a rule of law and defined it as follows:

"A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. * * *" Restatement of the Law 2d, Contracts (1981) 242, Section 90(1).

It is generally held that the essential

difference between equitable estoppel and promissory estoppel is that the former requires that the promise induced the detriment *and* the detriment induced the promise. Promissory estoppel is often characterized as a gratuitous promise. Equitable estoppel employs the classic concept of consideration, and promissory estoppel is a departure.

Early Ohio cases recognized and adopted the equitable estoppel doctrine. See *Workman* v. *Wright* (1878), 33 Ohio St. 405; see, also, *Welsh* v. *Tonti* (C.P. 1958), 82 Ohio Law Abs. 45. The usual requisites of the equitable estoppel doctrine are (1) an admission, statement or act to another party, inconsistent with the claim afterward asserted; (2) action by the other party on the faith of such admission, statement or act; (3) the other party had a right to rely; and (4) injury to such other party if the first party is allowed to contradict such admission, statement or act.

The equitable estoppel doctrine, being a stricter doctrine, has received much wider acceptance than promissory estoppel, and the latter has been criticized by treatise writers as generally being too nebulous a doctrine to enforce. Williston, Contracts, *supra,* at 607-619, Section 140; 17 American Jurisprudence 2d, *supra,* at 430-432, Section 89; 17 Ohio Jurisprudence 3d, *supra,* at 481-482, Section 49, and 488-490, Section 56. The trend of modern cases is to adopt a promissory estoppel doctrine where the evidence clearly shows that the statements were made to induce action and the promisor was culpable in some respect. 17 American Jurisprudence 2d, *supra,* at 432.

In two recent opinions the Ohio Supreme Court approved the Restatement doctrine, but denied relief. *McCroskey* v. *State* (1983), 8 Ohio St. 3d 29; *Talley* v. *Teamsters Local No. 377* (1977), 48 Ohio St. 2d 142 [2 O.O.3d 297]. Several earlier Ohio cases favorably quoted the Restatement, *supra,* and granted relief based on that doctrine, *W.B. Saunders Co.* v. *Galbraith* (1931), 40 Ohio App. 155; *Davis* v. *Famous Coal Co.* (M.C. 1935), 4 O.O. 178; *Cincinnati* v. *Thomas J. Emery Memorial* (App. 1936), 25 Ohio Law Abs. 57; *Graef* v. *Dime Savings Bank* (App. 1937), 24 Ohio Law Abs. 409.

The facts of this case prove all the elements of both doctrines. Plaintiff relied on defendant's June 7 promise that his group had the June 16 date, the defendant made the promise to the plaintiff so as to induce him to decline the wedding reception offer, and the plaintiff declined that offer in reliance on the defendant's promise. Defendant's promise directly induced plaintiff to forbear, and if that promise were not enforced it would cause the plaintiff injury and a serious injustice which cannot be otherwise enforced. The defendant is estopped from denying an agreement for the June 16 engagement and is liable to the plaintiff for $225.

The plaintiff did not specifically plead either of the doctrines, but the same were implied at the trial on the merits and, thus, those theories of recovery may be considered. Civ. R. 12(H)(2) and 15(B) are applicable.

Plaintiff cannot recover punitive damages or attorney fees. Punitive damages is a concept applicable in tort actions where aggravating factors are present. *Tibbs* v. *National Homes Constr. Corp.* (1977), 52 Ohio App. 2d 281 [6 O.O.3d 300]. No such factors existed. This is an action for breach of contract, and such action does not ordinarily permit an award of punitive damages. *Tibbs* v. *National Homes Constr. Corp., supra.* Plaintiff has not produced sufficient evidence to entitle him to recover punitive damages, nor, on any theory, can he recover attorney fees.

Plaintiff has proved his claim by a preponderance of the evidence that he is entitled to recover $225 from the defendant, but otherwise his proof has failed.

*Judgment accordingly.*