**R. RENAISSANCE, INC., Plaintiff,**

v.

**ROHM AND HAAS COMPANY, Defendant.**

Civ. No. C–1–81–777.

United States District Court, S.D. Ohio, W.D.

Jan. 26, 1987.

R. Guy Taft, William E. Santen, Leo J. Breslin, James M. Moore, Trial Attys., Santen, Santen & Hughes, P.A., Lindhorst & Dreidame, Cincinnati, Ohio, of counsel, for plaintiff.

Daniel J. Hoffheimer, Cincinnati, Ohio, for defendant.

## MEMORANDUM AND ORDER

DAVID S. PORTER, Senior District Judge.

### I.

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for summary judgment. Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In *Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the Supreme Court held that this rule mandates an entry of summary judgment against a party

> "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

This standard will be applied to each of the issues presented to the Court in defendant's motion for summary judgment and plaintiff's memorandum in opposition thereto.

### II.

Defendant's motion for summary judgment first raises the issue of whether plaintiff Renaissance (as Formco) as a matter of law sold to Celotex its rights to prosecute the case, and therefore is not the proper party to bring this suit against the defendant.

Disposition of this issue turns on the resolution of two points: 1) whether the documents constituting the contract of sale, as a matter of law, transferred the right to bring this claim to Celotex from Renaissance, and 2) if the cause of action was not transferred by the documents constituting the contract of sale, was it so transferred by de facto merger. We address these points in reverse order.

■ Defendant acknowledges that Ohio authority on de facto merger is sparse. Moreover, none of the cases cited by defendant support the argument that the de facto merger doctrine is applicable to the instant case. The instant case involves the exclusion of certain company assets, namely, a cause of action from a sale of other assets, while the cited cases involve the transfer of liabilities to a buyer corporation which has purchased substantially all of the assets, but only assets, of the seller corporation. Nevertheless, defendant urges the court to expand the doctrine of de facto merger on policy grounds. These policy arguments are not persuasive. Rohm & Haas argues that the court would be abetting duplicity by not expanding de facto merger to the instant case. Defendant contends that Renaissance failed to disclose the $69 million claim it is asserting herein, thus keeping a prize jewel from an unwitting buyer. Such an argument ignores the fact that the consideration paid by Celotex was arrived at based on both parties' assessments of the value of the disclosed assets. Undoubtedly, if the $69 million cause of action had been part of the bargain, the consideration paid by Celotex would have been adjusted unless considered worthless. Moreover, if defendant's position were to become law, then the ability of all future sellers to selectively sell off some assets while retaining others would be impaired. As the law now stands, a buyer corporation has the option of itemizing in the purchase agreement all the assets to be purchased or alternatively stating in some fashion that "all" of the seller corporation's assets are being purchased. Defendant would prefer to shift the burden to the seller to specifically disclaim in the sales contract each and every

asset not to be sold. The traditional and preferable approach is to require that the contract specify that which is being purchased and not require a listing of all that is being reserved to the seller.

Section 1701.88(B) of the Ohio Revised Code permits a dissolved corporation to prosecute to judgment any existing claim not yet sued upon.

*In re Lord Baltimore Press, Inc.*, 202 N.E.2d 730 (Ohio App.1964) stands for the proposition that intangibles such as accounts receivable and potential claims can be retained by a liquidating corporation (even when the liquidation is nearly total and the liquidating corporation even changes its name). Such a position enables the buying corporation to acquire the assets it needs to continue the seller's business as its own while leaving certain intangibles to the seller corporation which can liquidate them and distribute the proceeds to its shareholders.

In the case of *Ohio Consolidated Telephone Co. v. Communications Workers of America*, 162 N.E.2d 905, 926–27 (Ohio App.1957), a Bill of Sale stating that the seller corporation "did grant, bargain, sell, transfer and deliver unto" the buyer corporation "... all cash, bonds, stocks, obligations and other securities, together with all accounts and bills receivable, judgments and other evidences of indebtedness and *all claims and rights of action*" (emphasis added) was sufficient to convey the right to prosecute the claim, thus supporting by implication the proposition that specific language is required to properly sell a corporate asset. Other language in the documents of sale indicated that the intent of the transaction was to liquidate the entire corporation. In the case now before this Court there was no language manifesting a similar intent and no specific reference to the sale of any claims.

Thus, we reject defendant's argument for expansion of the de facto merger doctrine to make it applicable to these facts.

■ Given the above, for the defendant to prevail on summary judgment on the propriety of the plaintiff's bringing this

claim, defendant must show that the documents constituting the sales contract conveyed to buyer/Celotex Renaissance's (then Formco's) cause of action against Rohm and Haas as a matter of law.

The documents that constitute the contract of sale in this case are the 1) Purchase Agreement (Koppana Depo.Ex. 191), and 2) Bill of Sale, Assignment and Assumption (Koppana Depo.Ex. 203).

Defendant argues that the four corners of these documents transferred, as a matter of law, the right to prosecute this claim. We disagree. These documents of sale do not specifically include or exclude the claim against Rohm and Haas in the sale of assets to Celotex.

Defendant argues that the word "intangibles" in paragraph 1(e) of the Purchase Agreement embraces the cause of action herein. Plaintiff, however, contends that the term "intangibles" is qualified by the phrase "used in or associated with Sellers' business operations" (Depo.Ex. 191, p. 2 ¶ 2(e). Because of this ambiguity, parol evidence must be taken to establish the intention of the parties as do the transfer of this cause of action.

Under *Celotex v. Catrett* plaintiff has the burden in its memorandum in opposition to defendants' motion for summary judgment to allege facts on every essential element of its claim sufficient to defeat a motion for a directed verdict. Plaintiff meets its burden because of the ambiguity of the documents governing the sale of assets to Celotex and the statements by Leonard Koppana (¶¶ 6, 7, 8 and Exhibit 200 to Koppana's Depo.).

Because disposition of this issue bears directly on whether a full-scale trial need be held, we order that a separate proceeding under Federal Rule of Civil Procedure 42(b) be held on the sole issue of whether or not the plaintiff Formco/Renaissance transferred the ownership of the cause of action herein.

### III.

The next issue raised by defendant's motion for summary judgment is which statute of limitations applies to the plaintiff's breach of contract claim.

Ohio law provides a four-year statute of limitations under the U.C.C. for contracts for the sale of goods (O.R.C. § 1302.98) and a six-year statute of limitations for other contracts such as those governing the sales of services (O.R.C. § 2305.07).

■ Determining which statute of limitations applies to plaintiff's breach of contract claim requires application of the "Predominant Factor Test" articulated in *Allied Industrial Service Corp. v. Kasle Iron & Metals, Inc.*, 62 Ohio App.2d 144, 405 N.E. 2d 307 (Lucas Cty.1977).

Chapter 1302 of the Ohio Revised Code applies only to contracts for the sale of goods. Thus, the four-year statute of limitation of § 1302.98 is only applicable if the transaction is a sale of goods. If the contract is a sale of process or services, then the six-year statute of limitations of § 2305.07 applies.

■ From the facts it is clear that the agreement was not purely for a sale of services because quantities of resin were involved. The issue is whether the transaction at issue is purely one for goods or is a mixed goods and services contract. Where such a mixed contract exists, it is classified according to the predominant factor or purpose of the contract.

[T]he test for the inclusions in or the exclusion from sales provisions is whether the predominant factor and purpose of the contract is the rendition of service, with goods incidentally involved, or whether the contract is for the sale of goods, with labor incidentally involved. *Allied* at 147 [405 N.E.2d 307].

The pleadings, depositions and affidavits, read in the light most favorable to the plaintiff, clearly indicate that the factual issues remaining unresolved are too numerous for the court to grant the defendant's motion for summary judgment on the question of which statute of limitations governs.

■ An important corollary issue is the date that the breach of contract, if any, occurred. This is an issue of material fact

which is incapable of resolution by summary judgment. The fact finder at trial must weigh all the evidence to decide whether a breach occurred and, if so, when.

## IV.

■ Also raised in defendant's motion for summary judgment is the issue of which statute of frauds is applicable to the transaction at issue and whether or not the applicable statute of frauds bars plaintiff's breach of contract claim.

O.R.C. § 1302.04 applies where the contract is for a sale of goods or predominantly for a sale of goods. O.R.C. § 1335.05 applies where the contract is for a sale of a process or services or predominantly for a sale of a process or services.

The facts surrounding this transaction must be more fully developed at trial to determine first, which statute of frauds is the applicable one, and, second, whether the subsections of the applicable statute have been satisfied. Accordingly, defendant's motion for summary judgment is denied as to this issue.

## V.

■ The next issue defendant raises in its motion for summary judgment is whether the statute of limitations bars the plaintiff's fraud claim.

Ohio has a four-year statute of limitations for common-law fraud. O.R.C. § 2305.09. A cause of action for fraud does not accrue until the fraud is discovered. Discovery can be actual discovery or "what with due diligence might have been discovered." No more than a reasonable opportunity to discover the fraud is required to start the running of the period. *Kettering v. Berger,* 4 Ohio App.3d 254, 261, 448 N.E.2d 458 (Montgomery Cty. 1982), *Au Rustproofing Center v. Gulf Oil Corp.,* 755 F.2d 1231 (6th Cir.1985). "Discovery" is a question of fact and there are disputed issues of material fact as to when the discovery occurred or should have occurred in this case. Therefore, summary judgment should be denied to enable a factfinder at trial to decide when the fraud, if any, was or should have been discovered.

## VI.

Defendant's motion for summary judgment on the issue of promissory estoppel is also denied.

■ Promissory estoppel is a claim distinct from the plaintiff's oral contract claim. Although a statute of frauds may defeat an oral contract claim, a related claim for promissory estoppel may survive.

■ *Gathagan v. Firestone Tire & Rubber Co.,* 23 Ohio App.3d 16, 490 N.E.2d 923 (Summit Cty.1985) was an action on an oral contract of employment. In that case the court held that the O.R.C. 1335.05 statute of frauds "may be overcome by the doctrine of promissory estoppel." *Gathagan,* syllabus paragraph 2.

Additionally, the court held that "When a party seeks to rebut or overcome the defense of the Statute of Frauds (R.C. 1335.-05) by using the doctrine of promissory estoppel, the issue of whether the promisee's reliance is sufficient to stop the promisor from raising the statute as a bar is a question of fact to be decided by the trier of fact," *Id.,* syllabus, paragraph 3.

Applying those principles to this case, it is clear that summary judgment on this issue must be denied in that even if the statute of frauds does bar the oral contract claim it in no way bars the promissory estoppel claim.

■ Nevertheless, as a matter of law plaintiff cannot recover lost profits as an element of damages on the promissory estoppel claim. While Ohio law on the issue is sparse, two cases do exist and speak clearly to the issue.

In *Cincinnati Fluid Power, Inc. v. Rexnord, Inc.,* 773 F.2d 92 (6th Cir.1985) the plaintiff claimed that defendant represented to plaintiff that plaintiff would be the exclusive southwestern Ohio distributor for the defendant's products. The Court of Appeals upheld the trial court's instructions to the jury limiting plaintiff to its reliance damages and out-of-pocket expenditures not including lost profits or lost opportunities.

The trial court ... instructed the jury that Fluid Power could only receive reasonable reliance damages that it could not have mitigated. The trial court instructed the jury that 'the plaintiff is never given judgment for losses that he could have avoided by reasonable effort without risk of other substantial loss.' Additionally, the jury was told that Fluid Power's damages 'cannot exceed' the amount lost 'because of reasonable or foreseeable reliance on a promise or an amount which was within the contemplation of the parties at the time the promise was made.' In sum, when read as a whole, the jury instructions fairly and adequately informed the jury of the proper considerations for determining both liability and damages in this case.

*Id.* at 97.

The only other Ohio case dealing with this issue, one cited by the defendant, is *McIntosh v. Micheli Restaurant, Inc.*, 22 Ohio Misc.2d 5, 488 N.E.2d 1261 (1984). It is in accord with *Cincinnati Fluid Power* in limiting recovery under promissory estoppel to reliance damages.

## VII.

Defendant's final contention in its motion for summary judgment is that plaintiff is prohibited from receiving damages for lost profits as a matter of law.

Defendant argues in support of this position that the "Unestablished Business Rule" acts as a bar to plaintiff's claim of lost profits.

In this case, plaintiff was in the business of manufacturing vanity tops and sought to employ a new method to produce the same. The question of whether or not this constituted a "new business" so as to bar any recovery for lost profits or was merely an expansion of an existing venture is replete with factual questions which must be determined at trial. While defendant is correct that if plaintiff's undertaking is found to be a new venture then recovery of lost profits is prohibited, plaintiff has alleged sufficient disputed facts so as to preclude a grant of summary judgment. Accordingly, summary judgment on the Unestablished Business Rule is denied as is summary judgment on the issue of whether or not defendant is entitled to lost profits.

Nevertheless, defendant raises a valid argument about the validity of plaintiff's expert's report as to lost profits. The defendant cites to *Drayton v. Jiffee Chemical Corp.*, 591 F.2d 352, 362 (6th Cir.1978) as propounding the rule regarding expert testimony on damages:

[W]e have held that while the trial judge is within his discretion in permitting the testimony of economic experts concerning future damages, the court must still 'keep such extrapolations within reasonable bounds and insure that they conform to the evidence' ... We expanded somewhat upon the rationale of *Bach* to observe that 'what *Bach* aimed at preventing was *a projection of statistical data so attenuated as to be reductio ad absurdum, thus allowing damages to be ballooned beyond all rational experience.*' (Emphasis added.)

*See also, Bach v. Penn Central Transportation Co.*, 502 F.2d 1117 (6th Cir.1974).

Comparing the plaintiff's expert's report in this case to a similar report found to be "based solely on speculations and hypotheses ... unsubstantiated by any evidence in the record" in *Merit Motors, Inc. v. Chrysler Corp.*, 569 F.2d 666, 672 (2d Cir.1977) reveals the defects of the expert's approach herein. As defendant cited at page 32 in its Memorandum in Support of Motion for Summary Judgment, plaintiff's expert:

*assumes continued and unlimited production of Acryloid VIII from 1976 through the year 2000 (Rosen Depo. at 177–78: "Q. So your report does not taken into account the possibility that Acryloid VIII resin would become unavailable. A. Obviously not");

*assumes Formco and Rohm and Haas would both remain in business until that date (Formco sold its assets in 1980);

*assumes rapid increase of market share, without any assumption that the market leader of acrylic resin (DuPont's Corian) would adjust its prices to minimize incursion into market share (Rosen

Depo. at 142–43: "Q. What assumptions, if any, in your report did you make about competition by Corian once Formco got into the production of Acryloid VIII A. I made no assumptions. Q. So you didn't consider what reaction DuPont might have had to the introduction into the market of a competitor A. That's right");

\*_assumes_ a 25–year "life cycle" for the Acryloid VIII product despite the fact that Corian had already been marketed for ten to fifteen years and that Acryloid VIII had never been commercially produced at all (Rosen Depo. at 80: "It was difficult to get information on Corian, but what information I was able to get, and these were just impressionistic things ...");

\*_assumes_ that Formco would have 100% of the mythical Acryloid VIII product market from 1978–1981 and would decline to 50% of this hypothetical market by 1991 (Exhibit B, p. 4.8);

\*_assumes_ that Formco would be able to produce and sell Acryloid VIII products up to the full capacity of its plant (which was sold in 1980) and that any other hypothetical competitors in Acryloid VIII products would divide the remainder of the hypothetical market share (Rosen Depo. at 145: "Q. How did you come to the assumption as to how much of the market the other [Acryloid VIII] competitors would take A. It was essentially a residual. Q. In other words, you assumed that Formco would have a certain amount, and then whatever was left the other competitors would have A. I believe that's basically how it worked").

_See also, American Bearing Co. v. Litton Industries, Inc._, 540 F.Supp. 1163 (E.D.Pa. 1982).

## ORDER

For the reasons set forth in the attached memorandum it is hereby ordered that a trial pursuant to Rule 42(b) of the Federal Rules of Civil Procedure be held solely on the issue of whether or not the plaintiff transferred ownership of the claims in the above-captioned action to Celotex, the pro-ceeding to be held on Monday, March 2, 1987 at 9:30 a.m.

Also, defendant's motion for summary judgment is hereby denied except as to plaintiff's expert's report on damages which is inadmissible.

SO ORDERED.