## BAUMER v. FRANKLIN COUNTY DISTILLING CO., Inc.

### No. 9310.

Circuit Court of Appeals, Sixth Circuit.

April 15, 1943.

Strother Kiser, of Lexington, Ky. (Joseph L. Lackner, of Cincinnati, Ohio, on the brief), for appellant.

Leslie W. Morris, of Frankfort, Ky. (S. S. Yantis, of Lexington, Ky., and Marion Rider, of Frankfort, Ky., on the brief), for appellee.

Before HICKS, ALLEN, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

This is an appeal by Francis E. Baumer, a whisky salesman of Cincinnati, Ohio, from a judgment of the District Court for the Eastern District of Kentucky, dismissing his civil action for damages for breach of contract against the Franklin County Distilling Company, Inc., a Delaware corporation having its principal place of business and its distillery in Franklin County, Kentucky.

The justiciable controversy arises out of a contract of March 14, 1940, between the appellant and the appellee corporation, then entitled the K. Taylor Distilling Company. By this contract in writing, appellant was granted, for a period of three years in the Cincinnati area of the State of Ohio, an exclusive sales agency for two brands of whisky listed by appellee, namely, "K. Taylor," Bottled-in-Bond, and "Belle of Franklin," three years old—90 proof. Commissions to be paid appellant, in lieu of salary and expenses, were scheduled as "five (5%) per cent on all prices quoted f. o. b. distillery on all whisky shipped into" and sold in the Cincinnati area, and one per cent on all other sales in Ohio. It was agreed that advertising material for use by appellant in Ohio should be furnished by appellee, in its discretion and at its own cost; and that appellant would make no advertising contracts at the expense of the appellee. The appellant agreed "to furnish sufficient manpower to foster the distribution and sale" of appellee's brands of whisky in the Cincinnati area, and "to give the time, attention and effort" of himself and his employees "toward promoting such sales," at his own expense. The contract provided that no collections for the account of the appellee should be made or attempted by the appellant; and that "all sales policies in the Cincinnati area, known

as District A of the State of Ohio, are to be under the complete control of the distillery and nothing must be taken before the Ohio Liquor Control Commission, in person or by letter, without the knowledge and approval of the distillery."

The background of this sales agency contract should be brought to the front. The State of Ohio, in its liquor dispensary policy, is a so-called "monopoly State"; that is to say, liquor must be sold directly to the public through state retail stores. To market its whisky in Ohio, a distillery must obtain a listing of its brands before that state will purchase its products or permit them to be sold in retail stores. A brand of liquor may be officially listed for a trial period only; and, if sales fail to reach and maintain a prescribed quota, the brand is de-listed, with the consequence that no further purchases of it are made by the state. Obviously, after a brand is listed, consumer demand sufficient to maintain the required sales quota must be stimulated. This necessitates advertising and personal solicitation; for, while a whisky salesman makes no actual sales, he must popularize his brands by personal association with the managers of bars, hotels, night clubs, and the like.

The appellant assisted in obtaining approval, by the Department of Liquor Control of Ohio, of the K. Taylor and Belle of Franklin brands; whereupon, the state liquor stores in Ohio were directed officially to place them upon sales lists from which consumers made their choice. Appellant Baumer, with the cooperation of the appellee, vigorously inaugurated a popularization campaign for the appellee's two listed brands. He employed several salesmen, devoted much of his personal time, and incurred considerable expense in this effort.

Baumer's performance of his undertaking was satisfactory, and the demand developed for the K. Taylor brand was good for a liquor new in the territory. Sales of K. Taylor greatly exceeded those of the Belle of Franklin whisky. Notwithstanding this, the appellee, on August 5, 1940, consummated a sale to National Distillers Products Corporation of its distillery and certain other assets, including the K. Taylor brand. The Belle of Franklin brand was not included in this sale. Following the sale, and in consequence of it, the K. Taylor brand was withdrawn from the market, thereby rendering appellee incapable of furnishing that brand to the trade in the Ohio territory allotted to appellant by the contract of March 14, 1940. The appellee retained ownership of sufficient whisky of its own distillation to enable it to continue under the agency contract to sell its whisky in Ohio under the Belle of Franklin brand. This was unsatisfactory to appellant, who insists that, by withdrawal of the K. Taylor brand in Ohio, the appellee has breached its contract with him.

The sale of the K. Taylor brand was the culmination of a long-standing controversy between the appellee and the National Distillers Products Corporation concerning the use of that brand name. In National Distillers Products Corporation v. K. Taylor Distilling Co., E. D. Ky., 31 F. Supp. 611, 616, decided February 24, 1940, the district court enjoined appellee, then entitled K. Taylor Distilling Co., from using the name "Taylor" in its corporate name, or in any of its whisky labels or advertising matter, unless accompanied by a statement plainly and specifically showing that the appellee is "neither the successor to nor connected with the maker of 'Old Taylor' whisky," and that its product is "not the product of E. H. Taylor, Jr., and Sons, or its successors." In that case, Judge Ford decided, further, that the unfair competition of the appellee entitled National Distillers to an accounting.

In the case at bar, the district court found that, at the time of its contract of sale entered into with National Distillers, the appellee corporation was meeting competition with larger distillers rather unsuccessfully; was confronted with financial difficulties, and owed large amounts for taxes and other liabilities; and that the sale was a good faith exercise of the honest judgment of the directors, as in the best interest of the company, and not made in avoidance of the corporation's contract with appellant. It is noteworthy, however, that, in the company's 1940 report to its stockholders, the recital was made that: "Although the directors felt that the company could have successfully worked itself out of the difficulties which then confronted it, the price offered by National Distillers was so substantial that it was believed to be in the interest of the stockholders to accept it."

The district court found, as a matter of fact, that "K. Taylor" and "Belle of Franklin" were identical whiskies sold under different labels. This finding is not supported by the evidence. The one whisky

was, as described in the contract, "Bottled-in-Bond" and the other was three years old —90 proof. Moreover, in our judgment, the district court erred in holding that the contract did not require the appellee to furnish any particular brand of whisky. The very essence of the contract seems to us to have been the popularization and distribution of named brands.

The district court declared that the fact that no provision was contained in the contract for its continuance in the event that the appellee company should sell out, or suspend business, was the most cogent reason impelling decision that the contract had not been breached. The contract was construed as merely granting appellant an exclusive sales agency territory, as long as appellee chose to ship and sell the brands embraced in the contract covering the Cincinnati area.

We cannot concur in this interpretation. The contract provided in specific terms that appellant should have exclusive sales rights in the Cincinnati area for K. Taylor whisky, Bottled-in-Bond, as well as for Belle of Franklin whisky, three years old—90 proof. The record demonstrates beyond peradventure that the sales rights in the two brands were distinct and separate, and not of equal value, sales of K. Taylor having exceeded those of Belle of Franklin in the ceded territory at a ratio of approximately five to one. It was not within the contractual right of the appellee to insist that appellant accept the tender of Belle of Franklin in total substitution for K. Taylor, after that brand was sold to National Distillers.

At the outset and thereafter, the appellant was invited and encouraged by the appellee to expend his time and money in the development of a demand for K. Taylor whisky. It was within the knowledge and contemplation of both parties that the distilling company had on hand a sufficient supply of that brand of whisky to fulfil all demands therefor created as a result of appellant's sales efforts. No valid reason appears for arbitrary insertion into the contract between the parties of a condition which they, themselves, did not express or imply, either by words or conduct.

No specific provision that the appellee should remain in the distilling business was necessary to entitle appellant to rely upon the implied obligation inherent in appellee's promise to supply the K. Tay-

lor brand during the three-year life of the contract. An agency contract, terminable at will, is not to be deduced from the terms of the contract itself, or by necessary implication from its setting. On the contrary, the contract expressly provided for performance by both parties of their several obligations throughout a course of three years' time. It has long been established law that one, who by his own action has rendered himself incapable of performing a contract, may not successfully plead impossibility of performance in defense of his breach.

The district court regarded its interpretation of the sales agency contract as sustained by authoritative Federal decisions. Pellet v. Manufacturers' & Merchants' Ins. Co., 7 Cir., 104 F. 502; Friede v. White Co., S.D.N.Y., 244 F. 272. Two other Federal decisions were cited by the district judge in support of his conclusion that to construe the contract so as to deny the appellee company the right to sell its business, including a whisky trade brand, would be in effect the making of a new contract by the court, in substitution for that entered into by the parties themselves. William S. Gray & Co. v. Western Borax Co., 9 Cir., 99 F.2d 239; Stockton Commission Co. v. Narragansett Cotton Mills, D.C.R.I., 11 F.2d 618. In discussion of the Federal authorities, no mention was made of the decision of this court in Hollweg v. Schaefer Brokerage Co., 6 Cir., 197 F. 689, which bears closer analogy to the situation disclosed by this record than do the cases cited by the trial judge. In the Hollweg case, where a manufacturer agreed to furnish, during a definite term to a sales agency, a certain number of fruit jars for sale in a specified territory, this court, in an opinion by Judge Knappen, held that the contract was not terminable at the will of either party; and that the sale of the plant by the manufacturer, thereby disabling him from performing his obligation under the sales agency contract, could not be ruled as a matter of law *not* to constitute a breach.

In Macgregor v. Union Life Ins. Co., 121 F. 493, the Eighth Circuit Court of Appeals held that a life insurance company would be liable for damages for breach of contract, if, by transferring its business to another company, it became disabled to perform its contract with a general agent or manager appointed by it,

where either by the terms of the contract or by implication the agency was to continue for a definite term.

It would seem that the district court's interpretation of the contract and of the rights of the parties under it was not consistent with the pertinent Federal law. But appropriate state law and not Federal law governs in this case, which is grounded in jurisdiction upon the diversity of citizenship of the parties. See Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487.

Under the law of Kentucky, a contract, which by its terms refers to a particular place of performance, is to be construed by the law of the place of performance. Goddin v. Shipley, 46 Ky. 575, 577; Western Union Tel. Co. v. Eubanks & Russell, 100 Ky. 591, 605, 38 S.W. 1068, 36 L.R.A. 711, 66 Am.St.Rep. 361; Farmer v. Etheridge, Ky., 69 S.W. 761, 24 Ky.L. Rep. 649. The place of performance of the contract in the instant case was in the State of Ohio. Obviously, Ohio law must be looked to for interpretation of the contract, and for determination of the right of the appellant to demand the performance by appellee of its contractual obligations.

The attorneys for the respective parties apparently presented no Ohio authorities to the court below, and certainly they have adduced none here. This court has been compelled, therefore, to make its own independent research into the applicable Ohio law, as declared by the Supreme Court and the lower courts of that state. From such investigation, our judgment is that the district court erred in concluding that the appellee has not breached its contract.

In syllabus No. 4 to Suter v. Farmers' Fertilizer Co., 100 Ohio St. 403, 126 N.E. 304, to which, in conformity with the rule in Ohio, we turn for guidance, this pronouncement is made: "Where the obligations arising under a contract have attached, and subsequent thereto one party, without the consent of the other does some act or makes some new arrangement which prevents the carrying out of the contract according to its terms, he cannot avail himself of this conduct to avoid his liability to the other party." In the Suter case, the Supreme Court of Ohio reversed the judgment of the Court of Appeals of Franklin County affirming a directed verdict against a broker, who sued to recover commissions under a brokerage contract, which provided for a commission on the sale of sulphuric acid. The broker had negotiated a sale and the purchaser had entered into a binding contract with the broker's principal, who thereafter, for a valuable consideration, obtained a release of performance from the purchaser, but declined to pay the broker the commissions which the latter would have received pursuant to the terms of the brokerage contract, had the contract of sale which he negotiated been performed by the parties thereto. The Ohio Supreme Court held that judgment should have been rendered in the trial court in favor of the broker for the recovery of his commissions. In the opinion, it was said (op., 100 Ohio St. on page 411, 126 N.E. on page 306): "Even where the liability depends upon a condition precedent, one cannot avoid his liability by making the performance of the condition precedent impossible, or by preventing it."

It is clear from the Ohio decisions, that the courts of that state do not readily read into the terms of a definite contract an implied condition subsequent, as an effective excuse for non-performance. In Fosdick v. Greene, 27 Ohio St. 484, 22 Am.Rep. 328, performance of a stock-loan agreement was not excused by the failure of the corporation, the stock of which was the subject matter of the contract, where no condition excusing performance was expressly contained in the contract.

The Court of Appeals of Ohio for Hamilton County declared, in National Pumps Corporation v. American Pumps, Inc., 66 Ohio App. 175, 32 N.E.2d 422, that impossibility of performance of a contract is not a defense when the impossibility arises after the contract was made. As reported in syllabus 6, the holding was that "where [the] contract is to do a thing which is possible in itself, performance thereof is not excused by the occurrence of a contingency or situation, rendering performance impossible, although not foreseen by the party nor within his control." The court said (op., 32 N.E.2d at page 424): "This doctrine protects the integrity of contracts, and one of the reasons assigned for its support is that as against such contingencies, the party could have provided by his contract."

Even though the district court erred in holding that the appellee did not breach the contract, it does not follow that the appel-

lant has proved a case for recoverable damages.

The district court found that the contemplated profits which appellant sought to recover were "too highly speculative to sustain an action for damages." It was stated that the very nature of whisky, its constant subjection to moral attacks, the public policy of regulatory measures for its maximum taxation, and the speculative character of consumptive demand, especially for a new brand, made it impossible to predict what quantity of any particular brand would be sold in a given area within a specified time. The evidence in the case supports this finding. Careful scrutiny of the record discloses no method of calculation by which a judgment could be awarded for substantial damages, in any certain amount, without indulgence in that degree of speculation and conjecture which the law does not permit.

The district court relied upon the decision of this court in E. H. Taylor, Jr., & Sons v. Julius Levin Co., 6 Cir., 274 F. 275, in which, in a controversy concerning a whisky distribution agency contract, Judge Denison emphasized the highly speculative character of prospective profits from the whisky business.

When the facts of Hollweg v. Schaefer Brokerage Co., 6 Cir., 197 F. 689, cited by appellant, are compared with those of the case just cited, no conflict will be found in the recognition by this court of the principle that prospective profits may be too speculative to permit of recovery.

But on the issue of damages, as well as on the issue of breach of contract, the parties and the court below have assumed incorrectly that the Federal law controls. The damages allowable in the instant controversy must, in conformity with Erie Railroad Company v. Tompkins, supra, be measured within the restrictions established by Ohio law.

In Rhodes v. Baird, 16 Ohio St. 573, the Supreme Court of Ohio held that evidence as to the probable future profits from cultivation of a peach orchard was incompetent, for the reason that such evidence did not furnish a basis for the assessment of damages in view of its uncertain, speculative and conjectural character. Again, in Champion Ice Mfg. Cold Storage Co. v. Pennsylvania Iron Works Co., 68 Ohio St. 229, 235, 67 N.E. 486, it was made clear by the State Supreme Court that, in Ohio, the law does not permit recovery of damages which can be ascertained only by speculative methods. See, also, the opinion of Circuit Court of Cuyahoga County in Cowdrick v. Searles, 16 Ohio Cir.Ct.R.,N.S., 280, in which the principle declared in Rhodes v. Baird, supra, was applied.

In Myers v. The Sunlight Laundry Co., 10 Ohio App. 275, 278, the Court of Appeals for Hamilton County, Ohio, said: "The rule is well established that while the loss of profits from the interruption of an established business may be recovered, where the plaintiff makes it reasonably certain by competent proof what the amount of his loss actually is, the anticipated profits of a commercial business are ordinarily too remote, speculative, and dependent upon changing circumstances to warrant a judgment for their loss." But the Court of Appeals held that, where an agent establishes a breach of contract by his principal but is unable to prove substantial loss, the agent is at least entitled to nominal damages; and that, since judgment for the principal would carry costs, a failure to grant nominal damages would constitute reversible error.

Applying the principle of this last-cited case, it is manifest that the appellant, having shown a breach of contract by the appellee, should be awarded a judgment for a sufficient amount to carry the costs of the cause.

Accordingly, the judgment of the district court is reversed, and the cause remanded with direction that judgment be entered in favor of appellant against appellee in the sum of one dollar ($1.00), and for the costs of the cause.