414 F.2d 64
 Frances TOWNSEND, Administratrix of the Estate of Jerry M. Townsend, Deceased, Plaintiff-Appellant,
v.
R. P. POSTASHNICK, J. D. Barter Construction Company, Inc. and Gary Dale James, Defendants-Appellees.
 No. 19004.
 United States Court of Appeals Sixth Circuit.
 July 23, 1969.
 
 James C. Ware, Covington, Ky., Ware, Bryson, Nolan & West, Covington, Ky., on brief, for appellant.
 John J. O'Hara, Covington, Ky., O'Hara, Ruberg & Cetrulo, Covington, Ky., on brief, for appellees.
 Before O'SULLIVAN, PHILLIPS and EDWARDS, Circuit Judges.
 PHILLIPS, Circuit Judge.
 
 
 1
 This appeal grows out of the accidental death of Jerry M. Townsend, a young employee of the Department of Highways of the Commonwealth of Kentucky, at a construction site on Interstate Highway 71 between Louisville and Cincinnati. At the time of the fatal accident Townsend was sitting in a parked highway truck. A heavy tractor-scraper which was engaged in dumping dirt at the job site crashed into the rear of the truck, which caught fire. Townsend suffered severe burns, resulting in his death five days later.
 
 
 2
 The administratrix filed suit against the construction contractors and the driver of the tractor-scraper. The jury returned a verdict in favor of the defendants and the District Court rendered judgment accordingly. The administratrix appeals. We reverse.
 
 
 3
 The accident occurred at a point where the highway was in the dirt-filling stage of construction. The right of way was not open to public traffic. Vehicles at the scene were trucks, bulldozers and other equipment used in connection with the construction project.
 
 
 4
 The tractor, described as a D-9, weighed approximately thirty tons. It was 18 feet long, approximately 10 feet wide and approximately nine feet high. The tractor was similar to an ordinary bulldozer without a front blade. It pulled a scraper which was attached to the rear. The scraper was 41½ feet long, approximately 13 feet wide and 13 feet high. The operator would load the scraper with dirt, pull up a 30 per cent grade on a ramp described as a "haul road" to the bed of highway I-71 and then proceed to the point where the dirt was to be dumped in the fill area. At the time of the accident this equipment had been operating at the site for more than a day. More than 90 dirt dumping trips had been made the previous day, and 10 or 11 trips on the day of the accident. Each trip required a descent and ascent over the "haul road."
 
 
 5
 The tractor was so constructed that the operator could not see directly in front of him. He had visibility to his right or left but drove the tractor "blind" as to objects directly ahead. The highway truck in which Townsend was sitting was parked to the extreme right on the "haul road" and directly in the path of the tractor. The operator of the tractor did not see the truck until after the accident.
 
 
 6
 Townsend was working under the supervision of a highway inspector named McCormick, who was the driver of the truck at the time it was parked. McCormick testified that he parked the truck as far to its right side as he could get it and left the truck for the purpose of inspecting the culvert which was being backfilled. It is uncontradicted that McCormick parked the truck at a point on the "haul road" where it was directly in the route over which the tractor-scraper was operating. He left Townsend, a young and inexperienced employee, sitting in the truck with his back to the tractor-scraper. The record does not disclose exactly how long the truck had been parked on the "haul road" at the time of the accident. The operator of the tractor estimated that it could not have been more than two or three minutes.
 
 
 7
 McCormick testified as follows as to his own activities after leaving the parked truck:
 
 
 8
 "So I told Jerry that I would have to inspect this culvert. So I got out of the truck and walked over to this culvert, I think this end, I think this end of it, which is from here (indicating), the east end, and I walked from side to side, looking to see what all was down in the side where they have excavated it. It had roots and rocks and so forth and water, and this had to be removed, of course, and I walked all the way to the end of the culvert, as one would do, and I remember stopping. I put my foot up on a wing wall, which is at the west end of the culvert, or the top end, the top end of the culvert, and I would estimate that I was there a minute or two, here at this end (indicating), and I turned around and started back and I would estimate also that I walked a hundred feet from this end, back up toward this end of the culvert, and I heard the machinery stop. You know, there are four or five pieces of equipment running, it is real noisy, and everybody shuts off all at once. So, immediately I sensed after seeing the smoke, that something was wrong up on the fill. So I ran as fast as I could to the truck and —
 
 
 9
 "Q What did you find?
 
 
 10
 "A Sir?
 
 
 11
 "Q What did you find?
 
 
 12
 "A I found Jerry laying out on the passenger side of the truck, laying out in the dirt, out in the ditch line, and he had pulled the dirt up around his face, like he was trying to protect his face, and of course he was in shock at this time, as everybody was there, and he looked at me and said, `Mac, I'm going to die.'"
 
 
 13
 The District Judge was requested to charge the jury to the effect that the negligence of the foreman in parking the truck in the path of the tractor-scraper was not imputable to Townsend. The plaintiff offered the following instruction for submission to the jury which was rejected by the District Judge:
 
 
 14
 "The negligence, if any, of the driver of the truck in which Jerry Townsend was riding, in failing to perform any duty required of him, is not attributable to the plaintiff, Jerry Townsend, unless you believe from the evidence that such negligence, if any there was on his part, was the sole cause of the collision between said two vehicles resulting in the injuries and death of Jerry Townsend, in which event the law is for the defendants, and you will so find."
 
 
 15
 In his charge to the jury the District Judge commented that Townsend "had put himself and his truck" in a position of danger and that "he could very easily have put his truck out of the way." The following is an excerpt of the Court's instructions to the jury:
 
 
 16
 "Now, the plaintiff, Jerry Townsend, also had a duty. He had to be charged with knowledge of what was going on there. He was working on the job as a representative or employee of the State of Kentucky, for the purpose of testing this ground, and he also had a duty. He had a duty to look out for his own safety, with the knowledge that this heavy equipment was such as it was, ponderous and large, and that the operator was limited in his view of what was in front of him or to the side of him. In other words, it was the duty of Jerry Townsend to take care for his own safety and if you believe that he — that is, take care for his own safety by looking out for himself and looking out for vehicles and equipment operating there at that same time and place — and if you believe that Jerry Townsend failed to do that, and was negligent in getting his truck in the way of that equipment or putting it in such a position or staying in it after he did put it there, and by reason of that fact the injury occurred, the accident occurred, and that but for his own negligence the accident would not have occurred, then you should find for the defendants. In other words, it is the same in a way — might be used to describe it — as a pedestrian on the street; a car comes down the street and the driver of that car has a certain duty as to speed and lookout ahead and all of the things which the law imposes on him, which are no more than right, which are pretty stringent at that time; but he has to have that knowledge that that is what that street is for, for other vehicles and people to be on, and if a person walks out in front of the car or doesn't look out for his own safety, with knowledge that it is a street where automobiles are operating, and the pedestrian gets injured, he cannot claim that he has a right to recover damages, even though the operator of the vehicle was negligent if but for his own negligence the accident would not have occurred. I don't think that is too complicated. I think it is just a commonsense proposition and the same applies here.
 
 
 17
 "If you believe that Jerry Townsend at that time with the knowledge he had, had put himself in a place of danger, or had put himself and his truck in such a position that from what he could observe or see there, that it might be in the way of some of the equipment that was operating there, and that he did that with that knowledge, and you believe that his actions in that respect, taking into consideration all of the circumstances, was a negligent act on his part, that an ordinarily prudent person under the same or similar circumstances would not have done what he did, and that but for his negligence, if you believe that he was negligent, the accident would not have occurred, then you should find for the defendants.
 
 
 18
 "That's what you call contributory negligence. In other words, a person who contributes to the accident in which he was injured cannot recover if his contributing to it was the intervening cause; even though the defendant was negligent, his own negligence intervened and but for his own negligence it would not have occurred, then he cannot recover.
 
 
 19
 * * * * * *
 
 
 20
 "On the other hand, it is the theory of the defendant that this was a job of work, that they were building a highway, that it had to have heavy equipment in order to do heavy work; it was important, it was necessary to build the highway; and that the deceased had knowledge of this and that he could very easily have put his truck out of the way where there would be no question about it; he saw this equipment there when he went in, he knew that it was difficult for the operator of the equipment to see things in front of him, or to the side of him there; and that he could have driven that truck and put it out of the way or that if he put it where it was that he could have gotten out of it and that an ordinarily prudent person would have either not parked it there or would have gotten out of it when he did park it there; * * *" (Emphasis supplied.)
 
 
 21
 The refusal of the District Judge to instruct the jury expressly to the effect that the negligence of the foreman in parking the truck at a dangerous spot was not imputable to Townsend, coupled with the italicized language in the above-quoted excerpts from the charge on contributory negligence, very well could have confused the jury as to whether the action by Townsend's administratrix was barred by the negligence of his foreman. One of the jurors questioned the Court on this point as shown by the following extract from the record:
 
 
 22
 "THE COURT: Was there a question from one of the jurors?
 
 
 23
 "All right, Mr. Burton.
 
 
 24
 "JUROR: Judge, I have some confusion about that contributory negligence area. As I understood your instructions, if we would find equal negligence on the part of the driver and also on the part of the boy who was killed, the negligence on the part of the boy would, in effect, wipe out the other negligence?
 
 
 25
 "THE COURT: Right.
 
 
 26
 "JUROR: Now, there is another part that is related, but it is a little different. Suppose the equal negligence was on the part of the driver of the D9 and also on the part of the foreman who drove the truck up there?
 
 
 27
 "THE COURT: Well, it would have to be on the part of the boy that was killed. In other words, the foreman that drove the truck up there would not be in it at all. It is whether or not the boy who stayed in the truck, or was in the truck, was negligent in doing what he did, not what the foreman did.
 
 
 28
 "JUROR: This would be so far as returning a verdict for the plaintiff is concerned?
 
 
 29
 "THE COURT: That's right.
 
 
 30
 "JUROR: Now, would it have any effect on the amount of the verdict if the total, just reparation would be a certain amount, but in our minds we felt that contributory negligence — if that is the right term — on the part of somebody else, had a part in it? Would that liability be divided between those two people?
 
 
 31
 "THE COURT: No. * * *"
 
 
 32
 It is apparent that the words "contributory negligence * * * on the part of somebody else" in the last quoted question by the juror referred to the negligence of the foreman in parking the highway truck on the "haul road" being used by the scraper.
 
 
 33
 If the above quoted excerpt from the record is read with care, it reveals that the District Court told the jury that Townsend would be responsible only for his own contributory negligence and "that the foreman would not be in it at all." We are not convinced, however, that this explanation, at the time and under the circumstances it was given, cleared up the confusion in the minds of the jury.
 
 
 34
 To hold that the negligence of the foreman was imputable to Townsend would be against the overwhelming weight of authority.
 
 
 35
 The general rule is stated as follows in 8 Am.Jur.2d under the title "Automobiles and Highway Traffic," § 673:
 
 
 36
 "Where one driving a motor vehicle is a fellow employee of another riding therein, the negligence of the driver is not imputable to the occupant so as to bar recovery by the latter for injuries sustained as a result of the concurrent negligence of a third person, where the occupant has no control over the management of the vehicle. The fact that the driver and the occupant are fellow employees of a common employer, and are both acting in the scope of their employer's business and in the course of their employment, does not make them participants in a joint enterprise."
 
 
 37
 See City of Louisville v. Heitkemper's Adm'x, 169 Ky. 167, 172, 183 S.W. 465; McCoy v. Carter, 323 S.W.2d 210, 216 (Ky.).
 
 
 38
 We hold that the District Court committed reversible error in refusing to charge the jury affirmatively, as requested by plaintiff, to the effect that the negligence of the foreman was not imputable to Townsend.
 
 
 39
 Reversed and remanded for a new trial.