**CINCINNATI FLUID POWER, INC.,**
**Plaintiff-Appellee,**

v.

**REXNORD, INC., Defendant-Appellant.**

**No. 84–3326.**

United States Court of Appeals,
Sixth Circuit.

Argued May 3, 1985.
Decided Sept. 19, 1985.

---

Lawrence D. Walker, argued, Taft, Stettinius & Hollister, Cincinnati, Ohio, for defendant-appellant.

James M. Moore, argued, Cincinnati, Ohio, plaintiff-appellee.

Before JONES and KRUPANSKY, Circuit Judges, and PHILLIPS, Senior Circuit Judge.*

PER CURIAM.

Defendant Rexnord, Inc. (Racine) appeals from a jury verdict in favor of Plaintiff Cincinnati Fluid Power, Inc. (Fluid Power) in this diversity suit. Fluid Power relied upon Ohio's promissory estoppel doctrine in seeking damages for denial of an allegedly promised distributorship. Defendant Racine assigns error in the trial court's failure to give requested jury instructions, challenges evidentiary rulings, and alleges an absence of evidence supporting the damages awarded to Fluid Power. Upon consideration of all issues raised on appeal, we affirm.

Fluid Power is an Ohio corporation that served as an authorized distributor for hydraulic and pneumatic component manufacturers. Racine Fluid Power Division, located in Racine, Wisconsin, was an operating division of Rexnord. Racine manufactured hydraulic pumps, valves, and systems that it sold to independent authorized distributorships. In November, 1981, Fluid Power's president, Daniel Kallmyer, contacted Racine vice-president William Watson to learn whether Fluid Power could become a Racine distributor. Kallmyer learned that Racine was unhappy with its exclusive authorized distributor for southwest Ohio, Dynamic Technology, Inc. and that Racine planned to make "some changes" in the region. In early December, 1981, Kallmyer met with Watson and Racine's distributor sales manager, Donald Spaulding, at Racine's Wisconsin offices. During this meeting, the parties exchanged information about the companies, discussed Racine's expectations of its distributors, and discussed the written agreements upon which such relationships were based.

Following the December meeting, Kallmyer sought counsel at First National Bank of Cincinnati regarding financing of the additional inventory and expenses that Fluid Power would incur if it became a Racine distributor. On the advice of a bank vice-president, Kallmyer began to compile documents that would support an application for a Small Business Administration loan.

During the first three months of 1982, Watson and Spaulding were "shopping" to determine which of several possible replacements for Dynamic Technology would best serve Racine's interests in southwestern Ohio. They told Kallmyer that they planned to decide on their preferred distributor by March 23, 1982. As part of this process, Watson and Spaulding visited Fluid Power's Cincinnati facility in mid-February. Kallmyer testified that during this meeting he told Watson and Spaulding that if he were to increase his staff from three to seven persons to satisfy Racine, Fluid Powers would have to move to larger facilities. Kallmyer showed Watson and Spaulding the proposed new quarters for Fluid Power and received what he understood as their expressions of approval. At this time, Fluid Power had neither committed for the new space nor terminated the lease on its then current space, both of which were owned by the same company. There was testimony, however, that Kallmyer had told Racine in December that he planned to move to larger quarters to accommodate Fluid Power's current business.

On March 22, 1982, Kallmyer met with Watson and Spaulding in Wisconsin. Kallmyer testified that Spaulding told him, "We have made the decision that we want you to be our distributor in Southwestern Ohio." Watson and Spaulding reportedly told Kallmyer, "Don't go racing back to Cincinnati to announce this to the world. We will be terminating our distributor down there. They should hear it from Racine. They shouldn't hear it from someone

* The Honorable Harry Phillips concurred in this opinion prior to his death on August 3, 1985.

else." Although no written distribution agreement was executed during this meeting, Kallmyer testified that Watson and Spaulding told him Racine's decision was "solid." They reportedly also said, "You can take it to the bank," which Kallmyer testified he understood as "a phrase that meant you can depend on it." Finally, Kallmyer testified that the Racine representatives told him he could go ahead with the new lease in response to his report that the building's owner was anxious for him to decide about the space.

On March 23, Watson sent Kallmyer a letter intended to facilitate Fluid Power's application for a Small Business Administration loan. It read in part:

Per our conversation of March 22, 1982, I would like to confirm our intentions to appoint Cincinnati Fluid Power as our distributor in Southwestern Ohio, as soon as we can clear up some administrative details.

Racine maintains that these "administrative details" were the termination of its relationship with Dynamic Technology and execution of a written agreement with Fluid Power.

Kallmyer returned to Cincinnati and informed his landlord that Fluid Power wanted to lease the new, larger space. Soon, Fluid Power moved into the new facility and executed a lease that ran for 75 months beginning April 1, 1982. This lease and accompanying telephone and utility charges are the primary sources of Fluid Power's alleged reliance damages.

In early April 1982, Spaulding informed Ted Theiman, owner of Dynamic Technology, that Racine had determined to terminate its relationship with Dynamic Technology. Theiman responded by threatening litigation and demanding a meeting with senior executives of Racine. Despite lengthy discussions between Theiman and Racine representatives and an attempt by Kallmyer to purchase Dynamic Technology, that company continued as Racine's exclusive distributor in southwestern Ohio. Racine never executed a distribution agreement with Fluid Power. There was evi-

dence before the jury from which it could conclude either that Kallmyer learned of Theiman's objections before he executed the lease for the new space or that he only learned of Racine's difficulties after he was committed to the new, larger space. The jury also could find either that Kallmyer would have moved Fluid Power regardless of any promises by Racine or that the move was in reliance upon the March 22 representations. The jury returned a verdict in favor of Fluid Power and assessed $47,500 in damages.

■ Two of Racine's allegations of error on appeal challenge the trial court's rejection of jury instructions requested by Racine. This Court reviews the adequacy of jury instructions taken as a whole. *DSG Corp. v. Anderson,* 754 F.2d 678, 682 (6th Cir.1985). Jury instructions are not prejudicial if they "adequately inform the jury of the relevant considerations and provide a basis in law for aiding the jury in reaching its determination." *Blackwell v. Sun Electric Corp.,* 696 F.2d 1176, 1181 (6th Cir.1983). If the instructions fairly and adequately cover material issues, it is not error to refuse to give other requested instructions, even though they correctly state the law. *Carruba v. Transit Casualty Co.,* 443 F.2d 260, 264 (6th Cir.1971).

Fluid Power went to the jury on a theory of promissory estoppel that was factually based upon the statements of Watson and Spaulding to Kallmyer during the March 22, 1982 meeting. *Restatement of Contracts* 2d, § 90, as recognized by the Ohio Supreme Court in *McCroskey v. State,* 8 Ohio St.3d 29, 456 N.E.2d 1204 (1983), provided the legal authority for Fluid Power's theory of Racine's liability. Fluid Power maintained that it had reasonably relied to its detriment upon a promise by Racine to establish it as a Racine distributor. Racine defended on two grounds, arguing first that its representatives had made no "promise" to Fluid Power but had merely expressed intentions, desires, or plans. In the alternative, Racine argued that it had made only a conditional promise to Fluid Power that was conditioned upon both ter-

mination of Racine's relationship with Dynamic Technology and execution of a written agreement with Fluid Power.

■ The trial court thoroughly and properly instructed the jury regarding the elements of estoppel. Estoppel requires a clear and unambiguous promise that reasonably and foreseeably induces reliance causing injury to the party bringing suit. *See Talley v. Teamsters Local No. 377,* 48 Ohio St.2d 142, 357 N.E.2d 44 (1976). Additionally, Racine offered an instruction based upon *Restatement of Contracts* 2d, § 91, which provides that performance of a conditional promise "becomes due only upon the occurrence of the condition or upon the arrival of the specified date." The requested instruction accurately expresses the content of *Restatement* § 91 in the context of the events of this case. The trial court, however, declined to give this instruction and stated that he feared confusing the jury.

■ Although the requested instruction accurately stated the law, the trial court did not necessarily commit reversible error by refusing to present it to the jury. *Carruba,* 443 F.2d at 264. The trial court did instruct the jury that Racine would only be liable if any promise it made to Fluid Power had "reasonably and foreseeably induced reliance" by the plaintiff. Racine's alleged liability arose from actions Fluid Power claimed to have taken in reliance upon the March 22 discussions both without confirming that Racine had cancelled Dynamic Technology, and without executing its own distribution agreement with Racine. If the jury had accepted Racine's version of the March 22 discussions, this instruction would necessarily have resulted in a finding that Fluid Power's reliance was not reasonable or foreseeable because Dynamic Technology was not cancelled and Fluid Power had not contracted with Racine. Racine had advanced no reason in this case for us not to apply the normal presumption that the jury followed the instructions correctly as given. *See Pittman v. Little-field,* 438 F.2d 659, 662 (1st Cir.1971). *See*

*also* Wright & Miller, *Federal Practice and Procedure* § 2258.

We do not agree with the trial court that an instruction expressly concerning conditional promises would have confused the jury. The instructions that the trial court did give the jury regarding liability, however, when read as a whole, fairly and adequately informed the jury of the proper considerations by which to evaluate the central factual dispute on which Racine's defense turned. Consequently, under the facts of this case, the trial court's refusal to give such an instruction was harmless error at most. *See* Fed.R.Civ.P. 61.

The second issue concerns the trial court's refusal to give one of two requested instructions limiting the extent of Fluid Power's reliance damages. The proposed, but unexecuted, written contract between Fluid Power and Racine would have expired on June 30, 1983, approximately fourteen months after Racine's alleged promise to establish Fluid Power as its distributor. Allegedly in reliance on Racine's promise, Fluid Power entered into a 75-month lease for larger premises. That lease extended five years past the proposed termination date of the unexecuted contract. Racine maintains that it was entitled to one of two instructions; either an instruction that Fluid Power's damages for increased rental expenses could not extend beyond the term of the contemplated contract, or an instruction that the jury could award Fluid Power less than its reasonable reliance expenses if justice required.

■ The trial court did not reversibly err by declining to limit Fluid Power's recovery to the period of the contemplated contract. As a general matter, it is established that plaintiffs who recover damages in promissory estoppel actions should not be "placed in a better position for the alleged breach than they may have been had the promise been kept." *Gruen Industries, Inc. v. Biller,* 608 F.2d 274, 281 (7th Cir.1979). In the present case, however, the nature and terms of any promise by Racine were properly questions for the jury to determine upon a review of all the

evidence. The proposed contract did not establish the terms of the non-contractual promise on which Fluid Power sued; the proposed contract was neither fully negotiated nor executed by the parties. Nor did Fluid Power merely seek damages for Racine's failure to execute the proposed contract as written. There was competent evidence before the jury that Racine established firm, long-term relationships with its distributors, which it was reluctant to sever. The jury could have concluded that Racine's alleged promise to establish Fluid Power as its distributor involved a commitment far exceeding fourteen months. Therefore, the trial court properly declined to limit Fluid Power's damages to the period of the contract.

■ Racine's alternative requested instruction limiting damages was based upon *Restatement of Contracts* 2d, § 90, which provides that, "The remedy granted for breach may be limited as justice requires." The trial court satisfied this request by extensively instructing the jury that Fluid Power could only receive reasonable reliance damages that it could not have mitigated. The trial court instructed the jury that "the plaintiff is never given judgment for losses that he could have avoided by reasonable effort without risk of other substantial loss." Additionally, the jury was told that Fluid Power's damages "cannot exceed" the amount lost "because of reasonable or foreseeable reliance on a promise or an amount which was within the contemplation of the parties at the time the promise was made." In sum, when read as a whole, the jury instructions fairly and adequately informed the jury of the proper considerations for determining both liability and damages in this case.

■ Finally, Racine maintains that the jury's award of $47,500 in damages to Fluid Power was not supported by competent and substantial evidence. A damage award must be supported by evidence from which the alleged loss may be reasonably calculated. *Agricultural Services Association, Inc. v. Ferry-Morse Seed Co.*, 551 F.2d 1057, 1072 (6th Cir.1977). Fluid Pow-

er's damage claims were based upon expenses associated with its move to larger facilities in order to accommodate the requirements for Racine distributors. The damage claims for increased utility and telephone expenses were supported by competent evidence in the form of both Kallmyer's testimony from his personal knowledge as Fluid Power's president and Fluid Power's utility bills. Fluid Power's accounting expenses associated with the move were similarly documented.

■ The primary challenge on appeal to the damage award concerns evidence supporting Fluid Power's claim for increased rent expenses. The total rent expenses under the new lease were $76,000; the lease itself was entered into evidence and supported this finding. Kallmyer testified that this would exceed Fluid Power's lease expenses on its old quarters by $42,732. His testimony was based upon negotiations with his landlord for renewal of the lease for the old, smaller space. Racine objected to this testimony as hearsay, but was overruled. Racine maintains that there is no competent evidence of Fluid Power's increased lease expenses because Kallmyer's testimony was hearsay reporting the out-of-court declarations of his landlord.

Kallmyer's testimony concerning the price at which his landlord intended to renew Fluid Power's lease was hearsay; it was testimony regarding the out-of-court statements of his landlord, offered to prove the truth of the matter asserted. *See* F.R.E. 801(c). Kallmyer's testimony, however, was properly admitted into evidence under the hearsay exception established in F.R.E. 803(3). This provision allows admission of testimony regarding out-of-court statements of future intent and plans by declarants such as the landlord, although it generally does not allow admission of testimony concerning the declarant's statements of memory or belief about his past intents or plans.

The intent of Kallmyer's landlord to renew Fluid Power's lease at a certain price was at issue. Kallmyer testified regarding his landlord's statements that expressed

his then-future intent and the terms of his plan to renew Fluid Power's lease at a certain price. This Court has previously approved admission under F.R.E. 803(3) of testimony regarding similar out-of-court statements of future intent. *United States v. Williams*, 704 F.2d 315, 321–22 (6th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983) (testimony regarding statements of intent to use large sums of cash for certain legal purposes rather than for the purchase of cocaine); *Detroit Police Officers' Association v. Young*, 608 F.2d 671, 693–94 (6th Cir.1979), *cert. denied*, 452 U.S. 938, 101 S.Ct. 3079, 69 L.Ed.2d 951 (1981) (testimony regarding statements of intent to discriminate racially). *See also United States v. Harris*, 733 F.2d 994, 1004 (2d Cir.1984); *United States v. DiMaria*, 727 F.2d 265, 270–71 (2d Cir. 1984). F.R.E. 803(3) operates even where, as here, the declarant is available to testify. *Detroit Police Officers' Association*, 608 F.2d at 694. Nor does *Data General Corp. v. Scientific Information Management, Inc.*, 745 F.2d 56 (6th Cir.1984), control the present case. *Data General* is an unpublished opinion that does not consider F.R.E. 803(3).

For the foregoing reasons, the jury verdict and award of damages are AFFIRMED.

KRUPANSKY, Circuit Judge, dissenting.

For the reason that the majority opinion misconstrues the law applicable to three major issues presented in this appeal, I am compelled to dissent.

This action was initiated by the plaintiff Fluid Power pursuant to a theory of promissory estoppel as recognized by the Ohio Supreme Court in *McCroskey v. State*, 8 Ohio St.3d 29, 456 N.E.2d 1204, 1206 (1983). Fluid Power maintained that it had reasonably relied to its detriment upon a promise by Racine to establish it as a Racine distributor. Racine's defense asserted that initially it had made no "promise" to Fluid Power but had merely expressed intentions, desires or plans to make it a distributor. In the alternative, Racine urged that if any promise to make Fluid Power its

distributor were made, such promise was conditioned upon both the termination of Racine's relationship with its existing distributor, Dynamic Technology, and the execution of a written agreement with Fluid Power. The jury returned a verdict in favor of Fluid Power and assessed damages of $47,500.

At the conclusion of the evidence, the defendant requested the following jury instruction:

If you find from a preponderance of the evidence that Defendant did make a definite and certain offer on March 22, 1982, which it intended to be binding, then you must next determine whether that offer was conditional. Defendant denies that it made an offer on March 22, 1982, but if it did then such an offer was conditional upon the termination of the agreement with Dynamic Technology and the execution of a written contract with Plaintiff. If you find that Defendant's offer of March 22, 1982, was conditioned upon either of the foregoing then you must return a verdict for Defendant.

The requested instruction accurately articulated § 91 of the Restatement of Contracts 2d which provides:

If a promise within the terms of §§ 82–90 is in terms conditional or performable at a future time the promissor is bound thereby, but performance becomes due only upon the occurrence of the condition or upon the arrival of the specified date.

The trial court refused the requested instruction and stated that its general jury charge incorporated language that adequately informed the jury of the relevant issues joined by the evidence and the law applicable thereto. The trial court further stated that the requested jury instruction as it related to the issue of "conditional promise" would "be misleading to the jury."

The majority, having conceded that the conditional nature of the promise between the parties had been properly joined by the pleadings and the evidence, the accuracy of the defendant's requested charge, and that

the requested charge would not confuse the jury, nevertheless concluded that the jury instruction, as given by the trial court, when taken as a whole, adequately informed the jury of the relevant considerations by which to evaluate the central factual dispute of Racine's defense. *Blackwell v. Sun Electric Corp.*, 696 F.2d 1176, 1181 (6th Cir.1983).

An examination of the jury instruction as given discloses no language that addresses the issue of conditional promise either directly, indirectly, by inference or otherwise.

The reasoning of the majority to support its conclusion that the jury instruction, as given, adequately informed the jury of the proper considerations by which to evaluate the central factual dispute joined by Racine's "conditional promise" defense is:

The trial court did instruct the jury that Racine would only be liable if any promise it made to Fluid Power had "reasonably and forseeably included reliance" by the plaintiff. Racine's alleged liability arose from actions Fluid Power claimed to have taken in reliance upon the March 22 discussions both without confirming that Racine had cancelled Dynamic Technology, and without executing its own distribution agreement with Racine. If the jury had accepted Racine's version of the March 22 discussions, this instruction would necessarily have resulted in a finding that Fluid Power's reliance was not reasonable or foreseeable because Dynamic Technology was not cancelled and Fluid Power had not contracted with Racine.

Initially, the controlling language of the hypothecation, i.e. "reasonably and forseeably induced reliance" is taken out of context by the majority opinion. In its entirety, the charge reads:

The legal doctrine that must be used in your deliberations is the ancient doctrine of promissory estoppel and I'll tell you what that means. Ohio law holds that a promise orally or in writing which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or on the part of the third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.

Ohio law holds that there are four elements you must consider in deciding whether promissory estoppel applies. These are, first, a promise clear and unambiguous in its terms. Second, reliance by the parties to whom the promise is made. Third, the reliance must be both reasonable and foreseeable. And fourth, the party asserting the estoppel must be injured by the reliance.

Now, you should first decide, if a clear and unambigious promise was made by the Defendant on March 22nd, 1982.

If no promise was made or if you find those March 22nd, 1982, discussions were merely tentative or preliminary business negotiations then you must find for the Defendant. In considering this question it is not necessary that you find from the evidence that the Defendant made statements including the words—I'm sorry, includes words such as, quote "we promise". A promise is an offer which is definite and certain which the offeror intends to be binding. It is your function as jurors to decide the intent of the parties.

If, on the other hand, you find a promise made, you must then ask whether that promise reasonably and foreseeably induced reliance on the part of the Plaintiff. You must also decide if that reliance actually caused injury to the plaintiff.

When read in context, it is apparent that the controversial language of the jury instruction was directed to the issue of "promissory estoppel" and not "conditional promise". The words "whether that promise reasonably and foreseeably induced reliance on the part of the Plaintiff" defines an element necessary to prove a cause of action arising in "promissory estoppel." Secondly, the reasoning of the majority is nothing less than speculation.

It is conceded that the instruction as delivered by the trial court adequately and

properly addressed the issue of promissory estoppel. The fatal flaw in the instruction was the critical omission of an explication of the possible conditional nature of defendant's "promise" which was admittedly joined in issue by the defense offered by Racine, i.e., that its promise of a distributorship to Fluid Power was conditioned upon termination of the existing distributorship with Dynamic Technology and/or execution of a written agreement. Section 91 of the Restatement of Contracts 2d, by its own terms directly mandates an instruction on conditional promises as requested by defendant in the case at bar.

It has long been recognized that a party is entitled to a specific instruction on his theory of the case if there is evidence to support it and a proper request for the instruction is made; therefore, where, as here, the general jury instruction failed to incorporate the thrust of the requested instruction, failure to give the requested instruction is error. *United States v. McGuire*, 744 F.2d 1197, 1201 (6th Cir. 1984); *Clayton v. Burston*, 493 F.2d 429, 432 (5th Cir.1974); *Bolden v. Kansas City Southern Railway Co.*, 468 F.2d 580, 581 (5th Cir.1972); *Gillentine v. McKeand*, 426 F.2d 717, 724 (1st Cir.1970); *Townsend v. Postashnick*, 414 F.2d 64 (6th Cir.1969); *Megarry Brothers, Inc. v. United States*, 404 F.2d 479, 489 (8th Cir.1968).

Thus, contrary to the majority's determination that the omission of this instruction was harmless, I find this error to have seriously impacted defendant's substantive rights by essentially depriving Racine of a defense which, if adequately presented to the jury, could have affected its verdict.

In my view, the erroneous charge to the jury compels reversal of the jury decision and remand for a new trial. *See, e.g., R.G. Group Inc. v. The Horn & Hardart Co.*, 751 F.2d 69, 78–79 (2d Cir.1984) (under promissory estoppel theory, no "clear and unambiguous promise" established where grant of franchise was conditioned on the execution of a written contract); *Gruen Industries, Inc. v. Biller*, 608 F.2d 274, 281 (7th Cir.1979) (conditional promise alleged

was not a reasonable basis for reliance and thus not a proper basis for estoppel); *Pacific Cascade Corp. v. Nimmer, et al.*, 25 Wash.App. 552, 608 P.2d 266 (1980) (conditional promise can serve as basis of estoppel claim only if condition is satisfied prior to action taken in reliance on that promise).

Defendants' also assign error to the trial court's refusal to give one of two requested instructions limiting one element of Fluid Power's damages to the one year term of the controversial proposed distributorship agreement. As the majority correctly observes, the damages recovered by a plaintiff in an action predicated upon promissory estoppel should not place the promisee in a better position due to the breach than he may have been in had the promise been fulfilled. *Gruen Industries, Inc. v. Biller*, 608 F.2d 274, 281 (7th Cir. 1979). In the instant case, even if Fluid Power had secured the distributorship agreement as anticipated in April, 1982, that agreement, by its own terms, would have expired 14 months thereafter, i.e., June 30, 1983. While fully cognizant of that fact, plaintiff negotiated a 75-month lease for the larger facility, and the amount awarded by the jury obviously reflected the additional expenditures incurred over the entire life of the lease. Thus, the trial court's failure to limit damages to June 30, 1983, permitted the plaintiff to be placed in a better position than it would have if the promise had been fulfilled.

The majority opinion after having recognized the applicable law enunciated in *Gruen Industries, Inc. v. Biller*, 608 F.2d 274, 281 (7th Cir.1979), and after having conceded the term of the proposed contract as 14 months, proceeded to ignore both the law and the facts to again speculate by stating that "the jury could have concluded that Racine's alleged promise to establish Fluid Power as its distributor involved a commitment far exceeding fourteen months." It would have been equally logical for the majority to speculate that the proposed distributorship contract would have been terminated at the end of fourteen months because of a lack of perform-

ance. The conjectures of the majority notwithstanding, it appears that defendant's requested instruction limiting damages to the term of the proposed contract would have given direction to the jury consistent with the pronouncements of *Gruen Industries, Inc.* and foreclosed a verdict that placed the defendant in a better position as a result of the alleged breach than it would have been had the promise been kept and the contract executed.

Finally, I cannot concur with the majority's determination that the self-serving testimony of Fluid Power's president, Daniel Kallmyer, was sufficient to establish what its rent would have been had it retained its former premises. By its own terms, FRE 803(3) does not apply to situations, such as the one at bar, where the declarant's statement of intent is used *"to prove the fact remembered or believed"*—in this case to prove the specific amount of Fluid Power's future rent at its original location. Rather, as the cases which the majority relies upon demonstrate, Rule 803(3) is properly utilized in cases where intent *per se* is at issue.

For example, in *United States v. Williams,* 704 F.2d 315 (6th Cir.1983), it was incumbent upon the government to prove defendant's *intent* to possess cocaine in order to obtain a conviction for attempted possession of the illegal substance. Defendant therefore sought to use Rule 803(3) to permit a witness to relate statements defendant allegedly made to her concerning his intent to utilize large sums of cash found on his person for certain legal purposes rather than for the purchase of cocaine. Similarly, in *Detroit Police Officers' Assn. v. Young,* 608 F.2d 671 (6th Cir.1978), a critical issue was whether particular police department employment practices were the result of *intentional* racial discrimination against certain officers thereby making FRE 803(3) applicable.

In contrast, the intent of Kallmyer's landlord as to rent increases in the instant case was irrelevant as to the resolution of the dispute between plaintiff and defendant herein. Rather, the landlord's out-of-court

statements were used to prove a fact, i.e. the exact amount of future rents which served as the basis for calculating damages. Viewed from the proper perspective, Kallmyer's testimony in this respect was proscribed rather than permitted by the express language of Rule 803(3) and case law interpreting the rule. Because it was incumbent upon plaintiff to prove damages through the admission of competent evidence, *see Agricultural Services Ass'n Inc. v. Ferry-Morse Seed Co.,* 551 F.2d 1057, 1072 (6th Cir.1977), the use of Kallmyer's improperly admitted hearsay testimony cannot support the jury award. The plaintiff's failure to meet its burden to adduce competent proof of damages constituted reversible error. *See, e.g., Baumer v. Franklin County Distilling Co.,* 135 F.2d 384, 390 (6th Cir.1943) (Ohio law does not permit recovery of speculative damages).

In view of the foregoing, I would reverse and remand for a new trial.